**TWIN FAIR, INC., Plaintiff,**

v.

**Lawrence REGER et al.,**
**Defendants.**

**No. Civ–75–114.**

United States District Court,
W. D. New York.

May 7, 1975.

Saperston, Wiltse, Day & Wilson, Buffalo, N. Y. (Warren S. Radler, and Bruce D. Drucker, Buffalo, N. Y., of counsel), for plaintiff.

Duke, Holzman, Yaeger & Schlopy, Buffalo, N. Y. (Emanuel Duke and Max E. Schlopy, Buffalo, N. Y., of counsel), for defendants Reger, Mader Corp., Mader Corp. Employees Pension Trust, Mader Corp. Employees Profit Sharing Trust and John Doe.

Gross, Shuman, Laub & David, Buffalo, N. Y. (Irving M. Shuman, Buffalo, N. Y., of counsel), for defendants Warsitz and Advest Co.

CURTIN, Chief Judge.

In this action plaintiff seeks relief under Section 13(d) of the Securities Exchange Act, 15 U.S.C. § 78m(d)(1), [The Williams Act]. In brief, this section requires any person who acquires, directly or indirectly, the beneficial ownership of a class of registered equity securities, to file with the Securities and Exchange Commission [S.E.C.] a "Schedule 13D" statement and to send copies to the issuer and the exchanges on which the security is traded. Plaintiff claims that defendants have violated the Act. At the present time a motion for preliminary injunction is pending for decision before the court.

When the complaint was filed on March 24, 1975, the plaintiff also obtained an order from the Honorable Harold P. Burke of this court directing defendants to appear on March 31, 1975, to show cause why a preliminary injunction should not issue enjoining defendants from acquiring any additional shares of plaintiff's stock, from exercising any rights or privileges with respect to the shares of stock owned by defendants, from making any tender offers or soliciting any proxies, from taking other steps to acquire control of plaintiff, and from making any further violations of the Securities and Exchange Act of 1934.

At the same time he signed the order to show cause, Judge Burke signed a temporary restraining order restraining the defendants from committing any of the acts for which plaintiff sought preliminary and permanent relief. By stipulation the temporary restraining order was extended until April 7, 1975, when the parties appeared before me and argued the motion for a preliminary injunction. On April 7th and later on April

11th when the parties again appeared, it was agreed that a hearing was not required to resolve the question of a preliminary injunction and that decision could be made on the papers filed. On April 7, 1975, the court continued the temporary restraining order imposed by Judge Burke as to all defendants and on April 11, 1975, continued the temporary restraining order as to all defendants except Warren J. Warsitz and Advest Co. The reasons for extension of the order have been set forth in the record of the proceedings held on these days and also in an order filed by the court on April 8, 1975.

The parties do not dispute the facts in this case but seriously dispute the conclusions which the court ought to draw from the factual background. Twin Fair, Inc., a New York corporation primarily engaged in retailing in the operation of discount department stores, employs about 4500 individuals. On March 17, 1975, there were 2,507,412 shares of Twin Fair common stock outstanding, held by about 3800 stockholders. It is traded on the American Stock Exchange and registered with the Securities and Exchange Commission pursuant to Section 12(b) of the Securities Exchange Act of 1934. No dividends have been declared by Twin Fair for the last several years. In March 1973, Twin Fair sold for about 9⅞ but by the end of 1974 it had dropped to a range of 3½ to 3⅞. On February 14, 1975, Twin Fair issued a statement that it expected lower 1974 earnings from its operations because of a disappointing fourth quarter. Instead of falling, however, the price of the stock increased to a point where it stood in mid-March at about 7¼.

On February 20, 1975, 218,700 shares of Twin Fair stock were traded on the American Stock Exchange. Harold Egan, President of Twin Fair, became concerned because this represented about 9% of all the issued and outstanding Twin Fair stock. Upon inquiry he learned that defendant Advest, a securities broker, acting through its resident partner, Warren J. Warsitz, obtained about 130,000 of these shares. When he and other officers of Twin Fair tried to obtain the information of the true holders of the stock from Mr. Warsitz, they were rebuffed. At that time, March 10, 1975, Twin Fair's house counsel did advise Advest of the requirements of Section 13(d). On March 12th, Advest wrote to Twin Fair saying that they could not reveal the name of the customer for whom Advest had obtained the shares. Rumors of a "tender offer" were heard and following February 20, 1975, the stock of Twin Fair began to rise dramatically. Finally, on March 21, 1975, Mr. Warsitz telephoned Mr. Egan and told him that he was calling, at the request of Lawrence Reger, to identify the purchasers of the Twin Fair stock as Lawrence Reger personally, The Mader Corporation and the "Mader Pension Plan." The defendant Lawrence Reger is the president and controlling stockholder of The Mader Corporation and a trustee of The Mader Corporation Employees Pension Trust and The Mader Corporation Employees Profit Sharing Trust. He is also the chief executive officer of a number of other affiliated corporations or business entities [the John Doe defendants].

On April 7, 1975, Mr. Reger filed an affidavit explaining that he began acquiring Twin Fair stock for his own account in April 1974 and purchased stock from time to time thereafter when it became available. At the end of 1974 he was the holder of 68,700 shares of Twin Fair stock. He purchased 1300 shares in January 1975 and as of February 1, 1975, owned 70,000 shares. In early February he told Mr. Warsitz that he would be interested in making a block purchase of Twin Fair stock if the price was right. On February 5, 1975, the pension trust purchased 10,000 shares of Twin Fair. This purchase was made by Russell Walsh, a Mader executive, who made stock recommendations to the trustees of the pension trust. Reger said he was aware of the purchase and

told Walsh it was a good investment. Between February 4 and February 19, 1975, he purchased 23,700 shares for his own account in eighteen separate transactions.

On February 20, 1975, Mr. Warsitz informed Reger that a block of Twin Fair stock, involving about 180,000 shares, was being offered for 4⅜. Reger instructed Warsitz to purchase a substantial part of the block at $4.00 if he could. Warsitz was able to obtain 124,000 shares at four. Reger told Warsitz that The Mader Corporation would take 120,000 shares, the pension trust 1200 and that he would purchase the remainder for his own account. This, in addition to several small purchases made at about that time, increased his personal holdings to 100,000 shares. On February 21 and 26, 1975, the pension trust purchased an additional 9500 shares, bringing its total holdings of Twin Fair stock to 20,700 shares.

According to Mr. Reger's affidavit, neither he nor the other Mader-related defendants have purchased or sold any Twin Fair stock since February 26, 1975. At the time of argument, this fact was confirmed by the attorneys for the defendants. According to Reger, Mr. Warsitz told him on March 6th that it might be necessary for him to file some sort of a securities statement in connection with the Twin Fair stock. When they met on March 7th Warsitz told Reger that it would be necessary for him to file a statement if one purchased more than a given percentage, either 10% or 5% of a publicly owned company, and gave Reger some material explaining the filing requirements. Later that afternoon Reger unsuccessfully attempted to contact John Nasca, a principal stockholder of Twin Fair and a longtime acquaintance of Mr. Reger, to tell him about the purchase of 120,000 shares of stock on February 20th. On the evening of March 7th, when he met with counsel to discuss various matters, they talked about whether a filing was required. On March 10th, Mr. Reger left on a trip without contacting Mr. Nasca.

When he returned from his trip on March 18th, his attorneys told him he was required to file and did so on March 21, 1975. An amended schedule was filed on March 24, 1975, and after receiving a letter from the Securities and Exchange Commission on March 31, 1975, requesting additional information, a further amended schedule was filed on April 2, 1975.

The holdings of Lawrence Reger and the other defendants in Twin Fair stock as revealed in the schedules are as follows:

| | |
|---|---:|
| Lawrence Reger | 100,000 |
| The Mader Corp. | 120,000 |
| The Mader Profit Sharing Trust | 5,000 |
| The Mader Pension Trust | 20,700 |
| Total Shares | 245,700 |

Mr. Reger denies that the purchases were made to obtain control, insisting that they were made only for investment.

At the present time Mr. Reger and the Mader Enterprises are the largest shareholders in Twin Fair. From all the facts it appears that the activities of Reger and others were covert and contrary to his position that he purchased the stock merely for an investment. Although Mr. Egan requested the names of the purchasers from Warsitz soon after the February 20th large block purchase date, the only action taken by Reger to communicate any information to Twin Fair was his attempted phone call to Nasca on March 7th. Reger-Mader did not file a Schedule 13D by March 3, 1975. On March 21, 1975, plaintiff claims that the S.E.C. began an investigation and that this triggered Reger's revelation through Warsitz of the stock purchasing. The filings made by Reger in the first attempt prepared on March 21, 1975, were not in keeping with the regulations and provided little information. The March 24, 1975, amendment to that filing also did not comply. On April 2, 1975, a Schedule 13D document

supplying most of the required information was filed.

Section 13(d) of the Act, 15 U.S.C. § 78m(d), requires any person who has acquired the beneficial ownership of more than five percent of any equity security registered under Section 12 of the Act to file a statement with the S.E.C. within ten days after such acquisition and to serve the statement with the issuer. A "person" for the purposes of Section 13 (d) of the Act may be "two or more persons act[ing] as a partnership, limited partnership, syndicate, or other group for the purpose of acquiring, holding, or disposing of securities of an issuer," 15 U.S.C. § 78n(d)(2).

 Since it is undisputed that a filing was not made within the required time period, the threshold inquiry is whether the non-broker defendants are a group so as to trigger the reporting provisions of Section 13(d). A group consists of persons or entities who "act for purpose of acquiring [and] holding securities." A group may be formed in the absence of a written agreement. Indeed, "[s]uch requirement could render nugatory the purpose of the statute." Water & Wall Associates, Inc. v. American Consumer Industries, CCH Fed.Sec. L.Rep. ¶ 93,943, p. 93,756 (D.C.N.J. 1973). The Williams Act's purpose is "to obtain full disclosure of the identity of any person or group obtaining the benefits of ownership of securities by reason of any contract, understanding, relationship, agreement or other arrangement." 1968 U.S.Code Cong. & Admin.News at 2818. On the facts set forth above the courts finds that Mr. Reger and the various corporations and trusts were a group within the meaning of the statute. Significant is the method by which the various shares of Twin Fair stock were allocated to the different accounts, i. e., by Mr. Reger's personal instructions. The agreement to act together as a group to acquire shares of Twin Fair stock is sufficient to mandate that the § 13(d) filing requirements be met without evidence of a further agreement to acquire additional shares. See GAF Corp. v. Milstein, 453 F.2d 709 (2d Cir. 1971) ; 1968 U.S.Code Cong. & Admin.News at 2818.

 Innocent intent in acquiring shares, as alleged by the non-broker defendants, is irrelevant. "[T]he purpose of section 13(d) is to require disclosure of information by persons who have acquired a substantial interest, or increased their interest in the equity securities of a company by a substantial amount, within a relatively short period of time." 1968 U.S.Code Cong. & Admin.News at 2818. The target of the filing provisions of § 13(d) "is to alert the marketplace to every large, rapid aggregation or accumulation of securities, regardless of technique employed, which might represent a *potential* shift in corporate control . . . ." GAF Corp. v. Milstein, *supra* at 717 (emphasis added).

 The argument that a Schedule 13D was filed within a reasonable time after learning of the duty to file so that the failure to file a timely Schedule 13D was a mere technical violation is rejected by this court as it has been elsewhere. See Mosinee Paper Corp. v. Rondeau, 500 F.2d 1011 (7th Cir. 1974).

> The sweep of section 13(d) goes beyond the circumstances where the purchaser has formulated an intent to control, but also reaches that point when because of the size of the purchaser's holdings . . . and the fact that he acquired such holdings in a short amount of time, the purchaser portends the *potential* to effectuate a change in control.

*Id.* at 1016.

 For a preliminary injunction to issue the plaintiff must show probable success on the merits *and* possible irreparable injury. See, e. g., Sonesta International Hotels Corp. v. Wellington Associates, 483 F.2d 247 (2d Cir. 1973). From the above discussion it is apparent that as to Mr. Reger and the other non-broker defendants probable success on

the merits of the claim under § 13(d) has been demonstrated. As to possible irreparable injury flowing to Twin Fair, this court is in accord with the view that having transgressed the Williams Act, Reger et al. have harmed Twin Fair. Pursuant to section 13(d)(1), Twin Fair as an issuer was entitled to receive a timely filed Schedule 13D. Mosinee Paper Corp. v. Rondeau, *supra* at 1016–17. Further, it is clear that the early filings were not complete and that several entities within the Reger group owned just below the 5% limit of Twin Fair stock. The fact that Mr. Reger has a tax related indictment pending against him also is one legitimate concern of the investing public. Therefore, on the findings of fact I have made above along with these conclusions of law, I find that a preliminary injunction should issue against the non-broker defendants.

The form of the preliminary injunction is also in controversy. Defendants argue that, under the cases, injunctive relief going to the incidents of stock ownership is only available as to shares acquired after the filing date. The court finds this argument inconsistent with the legislative history and subsequent judicial interpretation of the Williams Act. *See, e. g.,* GAF Corp. v. Milstein, *supra.* "The Securities Exchange Act of 1934 is remedial legislation and is thus to be broadly construed in order to give effect to its intent." Graphic Sciences, Inc. v. International Mogul Mines, Ltd., CCH Fed.Sec.L.Rep. ¶ 94,834, p. 96,802 (D.C.D.C.1974) *citing* Tcherepin v. Knight, 389 U.S. 332, 336, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967). It has been recognized that the function of

a preliminary injunction in a securities case is to deter rather than to punish and it is best used to preserve the status quo. Graphic Sciences, Inc. v. International Mogul Mines, Ltd., *supra.* Since "the combination absent the filing is considered the unlawful act," Water & Wall Associates, Inc. v. American Consumer Industries, *supra,* at p. 93,760, this court believes that this is a proper case for disenfranchisement of the shares involved. It is therefore ordered that defendants Reger, The Mader Corporation, The Mader Corporation Employees Pension Trust, the "John Doe" defendants, and The Mader Corporation Employees Profit Sharing Trust, and any persons acting with, for or in concert with them are enjoined pending trial on the merits (1) from acquiring any further interest in plaintiff Twin Fair's common stock; (2) from seeking or soliciting a proxy from any stockholder or plaintiff; (3) from making or causing to be made any tender offer for all or any portion of the outstanding shares of plaintiff; (4) from voting the Twin Fair shares acquired on or after February 20, 1975, owned beneficially or otherwise totaling 137,000 shares; [1] (5) from disposing of any of Twin Fair common stock except by unsolicited open market sales which are not prearranged; and (6) from further violating the applicable provisions of the Securities and Exchange Act of 1934 and the rules and regulations promulgated thereunder.

As to defendants Warsitz and Advest, there are not facts sufficient to demonstrate that they were part of the "group" within the meaning of the statute. Considering the standards upon which a pre-

---

[1]. The injunction disenfranchising defendants Reger-Mader has been limited to the stock purchased on February 20, 1975, and thereafter. Such a limited disenfranchisement seems appropriate at this stage, i. e., preliminary relief, since "the purpose of the Act was to protect the shareholders by affording them notice of the prospect of an artificially induced price resulting from a struggle for control rather than being directed at the mere investor," Mosinee Paper Corp. v. Rondeau, *supra* at 1021.

It is the intent of the order to prohibit the voting of any shares purchased on February 20, 1975, or thereafter. These shares appear to include 124,000 shares the group purchased in a block, 3500 shares purchased by Mr. Reger in separate transactions on or about February 20 (computed by an analysis of Mr. Reger's affidavit detailing the shares in his personal account), and 9500 purchased by the Pension Trust for a total of 137,000 shares.

liminary injunction may be issued, it thus appears at this stage of the proceedings that plaintiff does not meet its requirement of showing probable success on the merits as to Warsitz and Advest. Further, it is clear that the form of the preliminary injunction issued against the other defendants protects plaintiff from further Reger-Mader violations of the Securities Act of 1934 in which Warsitz or Advest might otherwise participate. Plaintiff's claim for a preliminary injunction against Warsitz and Advest is therefore denied.

The above shall constitute the court's findings of fact and conclusions of law.

So ordered.