SECURITIES AND EXCHANGE COM-
MISSION, Plaintiff,

v.

UNION CORPORATION OF AMERICA,
Robert E. Keaney, Carl J. Gissy, Edwin
C. Meinert, Hugh W. Dowling, Stanley
J. Ciapciak, Thomas F. X. Gibbons, and
Theodore M. Lazarcheff, Defendants.

No. 61C 173(2).

United States District Court
E. D. Missouri, E. D.

Jan. 3, 1962.

Wm. D. Goldsberry, Local Counsel, St. Louis, Mo., for plaintiff.

Robert E. Keaney, St. Louis, Mo., for defendants.

HARPER, Chief Judge.

Defendant, Union Corporation of America (hereinafter called Union), is organized and has its principal place of business in Missouri. Defendants Keaney, Gissy, Meinert, Dowling, Ciapciak, Gibbons and Lazarcheff were directors

of the defendant Union at the time of the institution of these proceedings.

On October 13, 1955, Union filed a registration statement with the Securities and Exchange Commission (hereinafter called SEC) for 797,800 shares of its common stock at an offering price of $5.00 per share, pursuant to the Securities Act of 1933, as amended, 15 U.S.C.A. § 77a et seq., which statement became effective December 12, 1955. At this date Union had an additional 2,200 shares outstanding, a total of 800,000 shares, aggregating in value $4,000,000. Pursuant to Sec. 15 (d) of the Securities and Exchange Act of 1934, 15 U.S.C.A. § 78o(d), Union filed the annual report, Form 10–K, in 1956 and 1957. The 1958 report was not filed in the required time, nor in the ninety-day extension period granted by the Commission.

When filed, the SEC alleged its deficiency, challenged its validity, and requested amendments. The requested amendments were not filed, nor were the 10–K's for the years ending December 31, 1959, and 1960 filed. Two post effective amendments to the October 13, 1955, registration statement have been filed: (1) A September 23, 1957, amendment deregistered 537,800 shares effective September 26, 1957, and reduced the value of these shares plus the original 2,200 to $1,311,000; (2) A July 12, 1961, amendment further reduced the offering to 84,-534 shares, effective July 17, 1961. This left a total value, including the 2,200, of less than $1,000,000. The question involved is simply whether under the applicable statutes as applied to these facts, Union should be compelled to file a 10–K for 1959 and 1960, and the requested amendments.

This court has jurisdiction under Sec. 27 of the Securities Exchange Act of 1934, as amended, 15 U.S.C.A. § 78aa.

The problem before this court is essentially one of statutory interpretation and construction. No cases relevant to this endeavor have come to the court's attention. The statutory provision about which the controversy revolves is Sec. 15(d), 15 U.S.C.A. § 78o(d), particularly Sec. 78o(d) (3), which reads in relevant part as follows:

"*Each registration* statement hereafter filed pursuant to the Securities Act of 1933, *shall contain an undertaking by the issuer * * * to file with the Commission*, in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, *such supplementary and periodic information, documents and reports* as may be required pursuant to Sec. 78(m) of this title * * * *but such undertaking shall become operative only if the aggregate offering price of such issue of securities*, plus the aggregate value of all other securities of such issue of the same class (as hereinafter defined) outstanding, computed upon the basis of such offering price, *amounts to $2,-000,000 or more.* The issuer shall file such supplementary and periodic information, documents, and reports pursuant to such undertaking, *except that the duty to file shall be automatically suspended if and so* long as * * * (3) *the aggregate value of all outstanding securities of the class to which such issue belongs is reduced to less than $1,000,000 * * *.*" (Emphasis added.)

There is no dispute, and it is stipulated that Union registered well in excess of $2,000,000 worth of common stock effective December 12, 1955. Nor is it disputed that the registration contained an undertaking which required the filing of reports, and that Union actually filed the annual 10–K report in 1956 and 1957, as well as a 1958 report, the sufficiency of which has been questioned.

Union's first contention is that following the September 23, 1957, deregistration of 537,000 shares, defendant began its 1958 fiscal year with less than $2,000,-000 worth of stock offered and outstanding and "therefore, it takes the position that pursuant to 15(d) no report was re-

quired." This position is without merit. The plain meaning of 15(d) is that if at the time of the registration, the aggregate offering price plus outstanding shares of the same class exceeds $2,000,000, the duty to file reports is operative, *and remains operative* until at least one of the three events listed in the statute does occur. These events, upon the happening of which the duty to file reports ceases, do not include the occurrence of a drop in the value of stock (offered and sold) below $2,000,000. On the contrary, the aggregate value of stock offered and sold must fall below $1,000,000 before the undertaking to file reports becomes inoperative.

Union's second argument is not so easily disposed of. They contend that their duty to file reports was "automatically suspended" by virtue of Sec. 15(d)(3), the import of which is that where the amount of *outstanding* stock is reduced to less than $1,000,000, the duty to file reports ceases. It is not disputed that the maximum number of shares sold was 86,734, plus the 2,200 shares already outstanding, a value of $444,670.00. If stock "sold" is synonymous with stock "outstanding", Union may prevail in its contentions.

The problem presented by the interpretation of "outstanding" will be dealt with subsequently. It should first be noticed that, accepting arguendo Union's definition of outstanding, the SEC counters with the fact that Union never sold $1,000,000 worth of stock, that the statute says the amount outstanding must be *reduced* to less than $1,000,000, and that clearly under the circumstances Union did not comply with the statute by *reducing* stock to the required figure. What Union argues, in effect, is that regardless of the amount of a registration, the undertaking to file reports is not operative until at least $1,000,000 worth of stock is sold, and until that amount is sold, their stock is essentially, and for practical purposes, "reduced" within the spirit and meaning of 15(d)(3). But the plain meaning of the statute militates against this interpretation. It is necessary only

to have an aggregate of $2,000,000 in the newly registered offering and stock of the same class already outstanding, in order to make reporting duties operative. Nothing is said about an additional requisite or condition precedent in the nature of a minimum amount of sales. The avowed purpose of the Securities Exchange Act of 1934 is to protect investors, and it does not comport with this purpose to allow the existence of a potential, unregulated market amounting to many millions of dollars in stock offerings, but to start regulating *only* when a million dollars worth has already been sold. Such would be the effect of a consistent application of Union's theory. Thus, even taking Union's definition of "outstanding", that is, "sold", under the plain meaning of the statute, the duty to report continues. But Union has not established the correctness of their definition; they cite no cases or rulings supporting their view, it is merely their opinion.

The SEC apparently acquiesces in Union's definition, while arguing that the stock was not *reduced* below the requisite amount. But, this definition was accepted *only* for argument. Indeed, the SEC says, "The outstanding stock never exceeded such amount ($1,000,000) *as that term 'outstanding stock' has been construed by the defendants here.*" (Page 2, SEC's first brief.) (Emphasis added.) Outstanding stock, as apparently interpreted by the SEC, would include more than the stock "sold", it would also include stock still offered for sale. While the language on page four of the SEC's reply memo seems to bear out this approach, it is not without some confusion. Note the emphasized words:

"On July 12, 1961, subsequent to the filing of the complaint in this action, Union did file a post-effective amendment to its registration statement which reduced the number of its shares *offered and* outstanding to less than $1,000,000. This belated action relieves them of any duty to file reports for years subsequent to the fiscal year 1960." (Emphasis added.)

Confusion is extant, however, it is clear from the above that the SEC does intend to read Sec. 15(d) (3) to mean that reporting is unnecessary only when shares in the offering (registered) added to shares otherwise outstanding, total less than $1,000,000. While this may be a slightly strained construction, it is a feasible interpretation, and consistent with the general purpose of the statute.

Louis Loss, in his book "Securities Regulations, 1951", has recognized some of the problems facing this court, and some of the hardships which a defendant may encounter. Nevertheless, his understanding of the effect of the statute, unchanged in his 1955 Supplement, seems to agree with the application urged by the SEC in this case. He says, l. c. 498:

"The section (15(d)) is not without its anomalies so far as the $2,000,000 and $1,000,000 figures are concerned. On the one hand, an issuer whose undertaking initially becames operative under the $2,000,000 standard is absolved from any further duty to file reports when the class of securities to which the issue belongs is reduced to less than $1,000,000. On the other hand, a new issuer which has no outstanding securities but which offers $2,000,000 or more of securities is presumably subject to the reporting requirement even though it may never succeed in selling as much as $1,000,000 worth. *The only way to make the undertaking non-operative in the latter case, it would seem, is to file a post-effective amendment to the registration statement withdrawing the unsold portion of the offering in* order to come within the $1,000,000 exception." (Emphasis added.)

The "latter" case to which Mr. Loss refers is substantially the same as the one confronting this court, and his conclusion is that the only way to make the undertaking inoperative, is by deregistration of the offering so that the total is below $1,000,000. This is the method used on July 12, 1961—the method which the SEC agrees excuses Union from further reports. But the 1958, 1959 and 1960 reports are still due under the interpretation of the section by the SEC, Mr. Loss, and this court.

It cannot be successfully disputed that the SEC can require amendments and changes to reports it deems insufficient. Pursuant to the authority conferred on the Commission by Sections 15(d) and 23(a) of the Act, 15 U.S.C.A. §§ 78o(d) and 78w(a) the SEC has prescribed regulations as to the form, content and time of filing of reports under Sec. 15(d). 17 CFR 240.15d–1 and 240.15d–2 are particularly applicable, the latter referring specifically to insufficient financial statements, the cause of the SEC's request for amendment in this case. And, while a different section is involved in Securities and Exchange Commission v. Atlas Tack Corp., D.C., 93 F. Supp. 111, the case indicates the Commission's right to force compliance to their requirements for reporting as set out in the various regulations. Union can be compelled to produce the requested amendments to the 1958 Form 10–K.

The SEC asks that such injunctions as this court may see fit to enter, should run against the officers and directors named as defendants in the cause, as well as against the corporate defendant. In support of its contention it cites numerous cases illustrative of the point that a corporation acts through its board of directors and is controlled thereby. This is conceded as a general proposition of law, but its importance in this controversy is not clear. Plaintiff's fear that an order issued and directed only to the corporation may not bind the directors and may lead to future litigation, seems to be without justification. The SEC states that it is a uniform practice of United States District Courts to name officers and directors, as well as the corporation, in injunction suits pursuant to Sec. 15(d) of the Act. In support of this contention, four cases have been cited, but all are unreported and none have been made available to this court. On the other hand, the Atlas Tack case, supra, was an action to enjoin a corporate defendant

from continuation of its practice of violating the reporting requirements of the Securities Act of 1934. The court there directed the "company" to conform its reports to the provisions of the act, and did not name or direct an injunction toward officers or directors, apparently unafraid of future litigation over, or problems concerning the enforcement of the decree. Further, Section 20(c) of the Act, 15 U.S.C.A. § 78t, under which the SEC wishes to hold the directors responsible, reads as follows:

> "It shall be unlawful for any director or officer of, or any owner of any of the securities issued by, any issuer of any security registered on a national securities exchange, *without just cause* to hinder, delay, or obstruct the making or filing of any document, report, or information, required to be filed under this chapter or any rule or regulation thereunder or any undertaking contained in a registration statement as provided in subsection (d) of Section 78o of this title." (Emphasis added.)

It seems that plaintiff has failed to show a lack of good faith on the part of these directors. The lack of clarity of interpretation manifested in the SEC's briefs, and the very difficulty of decision in this case, is evidence that the directors may well have acted in good faith while interpreting the statute in a manner which precluded the necessity of filing further reports.

A mandatory injunction will issue against the defendant corporation requiring the filing of an annual 10–K for the years 1959 and 1960, and requiring compliance with the SEC request for amendments to the 1958 report, but the injunction does not run against the individual directors, and plaintiff's request for an injunction against failure to file further reports is superfluous since the only further reports required have been ordered by mandatory injunction.

Attorneys for the plaintiff will prepare the proper order and submit to the court for entry.