**WATERMAN–BIC PEN CORPORATION
and Societe Bic, Plaintiffs,**

v.

**BEISINGER INDUSTRIES CORP.,
Defendant.**

No. 70 Civ. 3037.

United States District Court,
S. D. New York.

Aug. 19, 1970.

to negate any potential confusion in the mind of the public due to the identical trade-mark.

Phillips, Nizer, Benjamin, Krim & Ballon, New York City, for plaintiffs; Louis Nizer, ·Leon Alexandroff, New York City, of counsel.

Milton Kean, New York City, for defendant.

## MEMORANDUM

COOPER, District Judge.

Plaintiffs, Societe Bic and its United States trade-mark assignee, Waterman-Bic Pen Corporation, seek a preliminary injunction pursuant to Rule 65, F.R.Civ. P. enjoining Beisinger Industries Corporation from utilizing the symbol "BIC" as its trade name, trade-mark and ticker symbol on the National Stock Exchange.

Jurisdiction rests upon the Lanham Trade-Mark Act of 1946, 15 U.S.C. § 1121, 28 U.S.C. § 1338, and the International Convention for the Protection of Industrial Property of March 20, 1883, as implemented by 15 U.S.C. § 1126(b), (g), (h), 28 U.S.C. § 1331.

Plaintiffs are the manufacturers and distributors of the BIC pen; they have established in some fifteen years a position as the leading ball point pen producer and the term "BIC" a household expression for the ball point pen. They contend that defendant has appropriated the term "BIC" in its advertising and as its ticker symbol with the purpose of trading upon plaintiffs' well-established reputation and deceiving the public into purchasing both its products and market stock in the belief that they have some association or relation with plaintiffs.

Beisinger's principal defense is that plaintiffs have failed to establish "one single iota of actual or possible damage * * * in the moving papers." Affidavit of Court Beisinger, In Opposition to Plaintiffs' Motion for a Preliminary Injunction, July 27, 1970, p. 1. In support of this position, defendant asserts that product dissimilarity is so large as

Defendant is engaged in the manufacture of rubber and plastic products. Heels, soles, unit soles and like products for the shoe industry represents approximately 75% of their [defendant's] total production. Approximately 20% * * * industrial rubber and plastic sheets, rods, tubes * * * used primarily in the chemical, communication, x-ray and defense areas. Approximately 5% * * * specialty chemicals and other items. In no instance do we manufacture for retail, nor are any of our products now used in the manufacture of fountain pens. Certainly there is little or no likelihood that the public could be misled or confused concerning these unrelated products. Beisinger Affidavit, supra, p. 2.

Defendant's contention that there must be direct competition to establish trademark infringement is erroneous. It is law settled beyond cavil that identity of products is not an essential prerequisite to our granting a preliminary injunction in such an action. Safeway Stores, Inc. v. Safeway Properties, Inc., 307 F.2d 495, 499 (2d Cir. 1962); Warner Bros. Records, Inc. v. Warner Music, Inc., 167 F.Supp. 661, 664 (S.D. N.Y.1958); Tiffany & Co. v. Tiffany Productions, Inc., 147 Misc. 679, 264 N. Y.S. 459, aff'd 237 App.Div. 801, 260 N. Y.S. 821 (1st Dept. 1932), aff'd 262 N.Y. 482, 188 N.E. 30 (1933); 1 Nims, Unfair Competition Trade-Mark (4th ed.) 390. What is involved in this present litigation is a coined and fancified term —BIC—without any independent definition other than the "secondary meaning" derived from plaintiff corporations. The evidence presented in plaintiffs' exhibits clearly establish that to the general public the term "BIC" is synonymous with plaintiffs' product. "Courts will afford equitable protection to the party whose use of the word has created the secondary meaning." *Safeway,* supra,

307 F.2d at 498–499; Maternally Yours, Inc. v. Your Maternity Shop, 234 F.2d 538 (2d Cir. 1958). See also Clairol Inc. v. Gillette Co., 389 F.2d 264, 269–270 (2d Cir. 1968). Simply stated, plaintiffs, who have established a right to a trade name which is fancified and has acquired a secondary meaning, are entitled to protection of their reputation even against the use of that name by a manufacturer of noncompeting goods "if the defendant's goods are likely to be thought to originate with the plaintiff." Triangle Publications, Inc. v. Rohrlich, 167 F.2d 969, 972 (2d Cir. 1948); R.H. Macy & Co., Inc. v. Macy's Drug Store, Inc., 84 F.2d 387 (3rd Cir. 1936).

■ The issue, therefore, is whether defendant's contemplated continued use of the emblem "BIC" is likely to cause such confusion, mistake or deception. Hills Bros. Coffee, Inc. v. Hills Supermarkets Inc., 428 F.2d 379 (1970, 2d Cir.). We hold in the affirmative on that issue, for we are compelled to conclude that plaintiff has demonstrated sufficient likelihood of confusion to warrant the issuance of an injunction. For one thing, there is a high degree of similarity between the trade-marks in physical appearance and suggestion, coupled with the strength and novelty of plaintiffs' mark. Next, despite the sharp difference in the underlying product, the use of "BIC" as an exchange symbol by defendant does not reflect that distinction; nor do defendant's advertisements disassociate the stock from plaintiff corporations. We find a real possibility that both the investor in defendant's stock and the purchaser of defendant's products may assume, in an era of extreme corporate diversification, that defendant is a part of plaintiffs' corporate structure.

Additionally, plaintiffs allege that defendant adopted the "BIC" symbol in 1967 with the obvious intention of misleading the public and trading upon plaintiffs' good will. In response, defendant alleges that it used the emblem "BIC" as early as 1938 when Beisinger

Industries Co. was formed. Defendant concedes, however, that the symbol was first employed by defendant in the United States in 1967; the paucity of evidence by defendant to support its contention of prior use does not rebut plaintiffs' allegations of bad faith. The possibility of confusion is further enhanced by defendant's revelation that it anticipates changing its corporate name to "BIC Chemicals, Inc."

Defendant's additional argument that other organizations may have used or registered the mark "BIC" or some reasonable facsimile thereof is unavailing and effectively answered by the cases cited in Plaintiffs' Reply Memorandum of Law, July 31, 1970, pp. 8–11.

Plaintiffs have made out a sufficient showing of probable success on the merits and likelihood of irreparable injury to support its application for a preliminary injunction. Accordingly, an order will issue restraining defendant Beisinger Industries Corp., its officers, directors, agents, servants, employees, successors and assigns, and all persons in active concert and participation with them, pending hearing and final determination of this action, from using the name "BIC" as defendant's trade name, trade-mark, and ticker symbol.

The order will be conditioned upon plaintiffs furnishing security in a sum to be fixed therein. If by the time of settlement of the order, the parties are unable to reach agreement as to this amount, they may submit such data by way of affidavit as will enable the court to determine the amount of security to be fixed.

■ This opinion constitutes our findings of fact and conclusions of law pursuant to Rule 52, F.R.Civ.P. Although we are well aware of our Circuit's admonition "concerning the undesirability of issuing temporary injunctions solely on the basis of affidavits, particularly in 'cases where everything turns on what happened and that is in sharp dispute.'" Semmes Motors, Inc. v. Ford Motor Co. 429 F.2d 1197 (1970, 2d Cir.), we note

that the factual issues herein certainly are not in such "sharp dispute" as to warrant our holding an evidentiary hearing. Moreover, at no time did either party, directly or indirectly, request such hearing. They were content to rest solely on the papers submitted.

Settle order on notice.