SECURITIES & EXCHANGE COM·
MISSION, Plaintiff,

v.

GENERAL REFRACTORIES COM·
PANY et al., Defendants.

Civ. A. No. 75–0809.

United States District Court,
District of Columbia,
Civil Division.

Sept. 23, 1975.

Richard S. Kraut, Benjamin Greenspoon, Harold L. Halpern, Michael F. Perlis, Washington, D. C., for plaintiff.

Edward F. Glynn, Jr., Marshall Cox, Jerome I. Chapman, Charles N. Brower, Mario V. Mirabelli, Washington, D. C., Anthony F. Phillips, New York City, James R. McAlee, Washington, D. C., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JOHN H. PRATT, District Judge.

The above-styled action came on for evidentiary hearing before the Court without a jury on September 18 and 19, 1975. The Securities and Exchange Commission ("SEC") brought the pres-

ent action to preliminarily and permanently enjoin alleged violations of Sections 10(b), 13(a), 13(d) and 14(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Rules 10b–5, 13a–1, 13d–1, 13d–2, 14a–3 and 14a–9 thereunder and Rule 12b–20 and for other relief.

Pursuant to a motion made by the SEC the Court issued a Temporary Restraining Order on May 30, 1975, extended on June 9, 1975, temporarily restraining defendants Hermann Mayer ("H. Mayer"), Dan Mayer, Refrax Handels Anstalt ("Refrax"), Sanbil Handels Anstalt ("Sanbil"), Aldo Handels Anstalt ("Aldo"), Magnesit Holding, A. G. ("Magnesit Holding") and Jorg Haemmerli from, in essence, acquiring, disposing, or voting of any securities of General Refractories Company ("GRX") owned, directly or indirectly, of record or beneficially and/or controlled by said defendants.[1]

Having considered the record and the briefs and argument of counsel, and the testimony had herein on September 18 and 19, 1975, and the affidavits and exhibits thereto received into evidence, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

*Introduction*

1. GRX is a Pennsylvania corporation primarily engaged in the business of manufacturing and distributing fire brick for the steel industry. The common shares of GRX are listed for trading on the New York Stock Exchange and the PBW Stock Exchange and are registered pursuant to Section 12(b) of the Exchange Act. Since approximately 1966, GRX has had approximately 3.8 million shares of common stock outstanding. During and at times prior to 1966, GRX had approximately 2.9 million shares of common stock outstanding.

2. H. Mayer, an Austrian citizen residing in Switzerland, owns and/or controls various European companies, including Refrax, Sanbil, Magnesit Holding, Aldo and A. G. Fuer Magnesit Export ("Export"). Dan Mayer is H. Mayer's son. In April 1971, Dan Mayer became a director of GRX. H. Mayer has for at least 45 years engaged in the ore brokerage and related businesses. Since approximately 1950, H. Mayer has engaged in business transactions with GRX and its subsidiaries.

*Stock Transactions*

3. Since at least 1965, H. Mayer has been a substantial stockholder in GRX. He has owned GRX shares through Refrax since at least the 1950's. In late 1964, H. Mayer purchased 44,100 GRX shares in a private transaction directly from GRX. In 1971, when Dan Mayer became a director of GRX, H. Mayer gave Dan Mayer 10,000 GRX shares. Since at least October 1972 H. Mayer beneficially owned and/or controlled, in conjunction with Dan Mayer and Refrax, Sanbil, Magnesit Holding and Aldo more than 5% of GRX's outstanding common shares.

4. From February 1973 through 1974, Refrax and Sanbil purchased substantial amounts of GRX shares on the New York Stock Exchange through orders placed, directly and indirectly, by H. Mayer and Dan Mayer with Bache & Co. Such shares were delivered against payment to Swiss Bank Corporation ("SBC") in New York. By March 8, 1974, H. Mayer, Dan Mayer and the aforementioned H. Mayer-controlled defendants held more than 10% of GRX's outstanding common stock at SBC and elsewhere.

5. As of January 31, 1974, approximately 432,586 GRX shares were held

---

1. The Temporary Restraining Order was continued twice by Stipulation between the SEC and H. Mayer, Dan Mayer, Refrax, Sanbil and Magnesit Holding, "so ordered" by this Court, and is effective through September 27, 1975. A default has been entered against defendants Aldo and Haemmerli.

of record in the name of Gunther & Co., a nominee for SBC. Such shares represented more than 10% of GRX's outstanding common stock.

6. In connection with the preparation of GRX's proxy materials for its proposed annual meeting in April 1974, questions arose concerning the beneficial ownership of the shares registered in the name of Gunther & Co. and required disclosures pertaining thereto. Upon noticing the disclosure of Gunther & Co.'s holdings in GRX's proxy materials, U. S. counsel to SBC advised SBC not to vote the GRX shares unless prior disclosure was made of the identities of the beneficial owners of such shares. H. Mayer directed SBC, in April 1974, that he did not want, under any circumstances, to run the risk of disclosure of the identities of the beneficial owners of the GRX shares held by SBC to any U. S. regulatory authorities and reproached SBC for holding his shares and the shares of his controlled entities in one nominee name. Following H. Mayer's instructions, SBC did not reveal his or his companies' identities and the shares were not voted. Accordingly, H. Mayer, Refrax, Sanbil, Magnesit Holding and Aldo concealed from the SEC, GRX and GRX's shareholders their ownership of GRX shares and the nature and amount of business transactions between them and GRX and its subsidiaries.[2]

7. Following H. Mayer's instructions that he did not want the identity of the beneficial owners of the Gunther & Co. GRX shares to be revealed, SBC instructed its New York City branch to break up the block of GRX shares and to deliver portions to various correspondent institutions to be held in blocks of less than 5% of GRX's outstanding shares in different nominee names. H. Mayer also advised SBC that he proposed to purchase additional GRX shares.

8. From May 1974 through the balance of the year, Refrax and Sanbil purchased an additional 135,000 shares, which shares were delivered to Brown Brothers Harriman & Co. for the account of SBC. Portions of such shares were redelivered to institutional correspondents of SBC to be held in various nominee names to further conceal the identity of the beneficial owners of such shares.

8a. H. Mayer currently owns 5,300 GRX shares. Refrax currently owns 97,300 GRX shares. Magnesit Holding currently owns and/or controls 74,100 GRX shares. Sanbil currently owns 274,600 GRX shares. Dan Mayer currently owns 10,000 GRX shares. H. Mayer currently owns and/or controls 144,000 GRX shares purchased in October 1972 through Wertheim and Co. H. Mayer currently owns and/or controls 53,226 GRX shares purchased in the SBC Lausanne Special Account at Bashe & Co.

*Business Transactions*

9. For many years, H. Mayer and H. Mayer-controlled companies, including Refrax and Export, have purchased magnesite ore from GRX subsidiaries and have resold such ore, in addition to others, to GRX and to GRX subsidiaries. Such transactions have involved payments of many millions of dollars. H. Mayer, Refrax and Export have realized substantial mark-ups and commissions in connection with such transactions.

10. H. Mayer-controlled companies, including subsidiaries of Magnesit Holding and Export, have sold finished products on behalf of GRX in amounts involving many millions of dollars and have realized substantial mark-ups and commissions in connection with such transactions. H. Mayer acquired Magne-

---

2. The Court here expresses no view as to the adequacy of steps taken by GRX to determine the identity of the Gunther & Co. block's beneficial owner or as to whether GRX, in fact, knew that H. Mayer was the beneficial owner or as to what additional measures to ensure disclosure should have been employed by GRX.

sit Holding in 1962 from General Magnesit Handels Anstalt ("GMHA"), a wholly owned subsidiary of GRX based in Zurich, Switzerland, for $293,000.

11. Also in 1962, Aldo, an H. Mayer owned and/or controlled company, acquired from GMHA for approximately $8 million, paid for in Aldo 3¾% long term debentures, in circuitous, convoluted and questionable transactions through Minerex Handels Anstalt ("Minerex"), another Liechtenstein Anstalt, rights to receive royalties from licenses of various patents and portions of commissions realized by H. Mayer-companies in transactions with GRX and subsidiaries which were being rebated to GMHA. Substantial amounts of royalties and previously rebated commissions were paid to Aldo following the sale of such rights. For example, one GRX subsidiary alone, Grefmex, paid royalties to Aldo totalling approximately $1.5 million during the period 1965–1969.

12. In June 1965, certain of the rights were sold by Aldo, through Minerex, and repurchased by GMHA, in transactions which were essentially a reversal of the transactions whereby GMHA had sold the rights to Aldo. Aldo redeemed $1,250,000 of its debentures from GMHA to fund GMHA's repurchase of the rights.

13. In 1969, GRX repurchased additional rights for approximately $3 million and, again, obtained such funds through Aldo's redemption of debentures in a like amount. Funds were channeled from GMHA to a GRX bank account in New York and then to Aldo which transferred the funds to GMHA in Switzerland in redemption of the debentures.

14. The foregoing transactions were of such a questionable nature that, in view of the absence of any probative evidence to the contrary advanced by the defendants at the evidentiary hearing, it appears that GRX was injured and wrongfully deprived of benefits and assets by such transactions.

*Board Representation*

15. From 1965 until April 1971, H. Mayer was represented on the Board of Directors of GRX by Otto Griesser. Subsequently, from April 1971 until April 1975, H. Mayer was represented on the Board of Directors of GRX by Dan Mayer.

*False Filings*

16. Since at least 1965 and continuing to date, GRX has filed and H. Mayer, Dan Mayer, Refrax, Sanbil, Magnesit Holding, Export and Aldo have caused GRX to file annual reports and proxy materials with the SEC and GRX has disseminated and H. Mayer, Dan Mayer, Refrax, Sanbil, Magnesit Holding, Export and Aldo have caused GRX to disseminate such reports and materials to GRX shareholders and the investing public which failed to disclose the amounts of GRX shares owned by H. Mayer, Dan Mayer, Refrax, Sanbil, Magnesit Holding and Aldo, H. Mayer's board representation and the nature and amounts of transactions between GRX and its subsidiaries and H. Mayer and his controlled companies.

17. H. Mayer was aware of the annual report and proxy disclosure requirements at least by the mid-1960's. Dan Mayer was aware of such requirements at least as of the time he became a director of GRX in 1971. H. Mayer was aware of the stock ownership reporting requirements under Section 13 (d) of the Exchange Act by at least March 1974.

18. H. Mayer, Dan Mayer, Refrax, Sanbil, Magnesit Holding and Aldo failed to file a Schedule 13D with the SEC and to deliver such Schedule to GRX and the New York and PBW Stock Exchanges disclosing their ownership of GRX stock and other information required in such schedule within 10 days after they had collectively acquired more than 5% of GRX's outstanding common stock. Their positions in GRX stock exceeded 5% at least by October 1972.

1254

19. As a result of the SEC's investigation of this matter, H. Mayer instructed Sanbil to file and Sanbil filed a Schedule 13D with the Commission on December 20, 1974. Such schedule failed to disclose the holdings of GRX stock by Refrax, Magnesit Holding, Aldo, H. Mayer and Dan Mayer, which acquired and held GRX as a "group" with Sanbil, failed to disclose that H. Mayer was a founder, until 1967 a director, and controlling person of Sanbil, and failed to disclose H. Mayer's material occupations and names of businesses with which he was associated for the previous 10 years and the nature and amount of H. Mayer's and H. Mayer's companies' business transactions with GRX and its subsidiaries.

20. On February 10, 1975, H. Mayer caused Sanbil to file a first amendment to the aforementioned Schedule 13D which failed to disclose the same information omitted in Sanbil's original Schedule 13D.

21. On March 25, 1975, H. Mayer caused Sanbil to file a second amendment to its Schedule 13D which disclosed, in addition to the amount of GRX shares owned by Sanbil, the amount of shares owned by H. Mayer and Refrax and shares previously owned by Magnesit Holding. However, the amendment failed to disclose the amount of shares owned by Magnesit Holding, failed to disclose that Sanbil, Refrax, Magnesit Holding, Aldo, H. Mayer and Dan Mayer were acting as a "group" and falsely stated that Magnesit Holding had divested its 74,100 GRX shares in a private transaction in December 1974. While the amendment disclosed that H. Mayer was a founder and former director of Sanbil and disclosed generally H. Mayer's principal occupations, the amendment failed to disclose that H. Mayer continued to be a controlling person of Sanbil and failed to disclose that his companies had extensive transactions with GRX and its subsidiaries, bought ore from and sold ore to GRX and its subsidiaries, sold finished products for GRX and its subsidiaries and engaged in other substantial transactions with GRX.

22. The means and instrumentalities of interstate commerce and the mails and national securities exchanges were used in connection with the activities alleged in the SEC's complaint.

## CONCLUSIONS OF LAW

*Standards for Granting Preliminary Relief*

■ 23. Under Section 21(e) of the Exchange Act, 15 U.S.C. 78u(e), the test for injunctive relief is whether or not a proper showing of need has been made by the SEC. *SEC v. Bennett & Co.*, 207 F.Supp. 919 (D.N.J.1962); *SEC v. Broadwall Securities, Inc.*, 240 F.Supp. 962 (S.D.N.Y.1965). A proper showing has been defined as a justifiable basis for believing, derived from reasonable inquiry or other credible information, that such a state of facts probably existed as reasonably would lead the SEC to believe that the defendants were engaged in violations of the statutes involved. *Federal Trade Commission v. Rhodes Pharmacal Co.*, 191 F.2d 744, 777–78 (7th Cir. 1951). This standard is quite different from the common law equity basis for an injunction and no showing of irreparable injury is required. *SEC v. Management Dynamics, Inc.*, 515 F.2d 801 (2d Cir. 1975); *SEC v. General Securities Co.*, 216 F.Supp. 350, 352 (S.D.N.Y.1963); *SEC v. Broadwall Securities, Inc, supra* at 967.

■ 24. This Court, in exercising its discretion in issuing a statutory injunction, is guided by the primary objectives of the statute involved using public interest standards as opposed to private litigation requirements, *Hecht Co. v. Bowles*, 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754 (1944). The public interest, when in conflict with private interest, is paramount. *SEC v. Culpepper*, 270 F.2d 241, 250 (2d Cir. 1959).

■ 25. While in the case of litigation instituted by the SEC, the SEC

need not show that the balance of hardships tips decidedly toward it, the SEC has during the course of the evidentiary hearing raised questions so serious as to make them grounds for litigation. *International Controls Corp. v. Vesco,* 490 F.2d 1334 (2d Cir. 1974). The SEC has made a *prima facie* case that the defendants have engaged and are currently engaging in a course of conduct violative of the anti-fraud provisions, Williams Act, reporting and proxy provisions of the Exchange Act, and that, unless enjoined, will continue to engage in such violative conduct to the detriment of GRX shareholders and the investing public. In considering the facts, the Court need not make a final determination as to their merit, but only find that the SEC has presented a *prima facie* case justifying the discretionary issuance of a preliminary injunction, *SEC v. Boren,* 283 F.2d 312 (2d Cir. 1960).

*Admissibility of the SEC's Affidavits*

26. Defendants, during the course of the evidentiary hearing, raised questions as to the admissibility of the affidavits and supporting exhibits of Harold L. Halpern, a staff attorney employed by the SEC, filed in support of the SEC's motions for temporary restraining order and preliminary injunction.[3] The Court concludes, for the reasons set forth below, that the affidavits and appended exhibits were properly admitted in evidence at the evidentiary hearing held on September 18 and 19, 1975.

■■ 27. Rule 65(a) of the Federal Rules of Civil Procedure contemplates the introduction at a hearing on a preliminary injunction of evidence which would not be admissible in a final trial on the merits. This relaxation of the rule of evidence at the preliminary injunction stage is consonant with one of the key purposes of a preliminary injunction: the need for speedy relief. *Wounded Knee Legal Defense/Offense Committee v. FBI,* 507 F.2d 1281, 1287 (8th Cir. 1974). Sworn affidavits and investigatory transcripts of testimony taken under oath are properly admitted as probative evidence at a preliminary injunctive hearing, where, as here, testimony of numerous live witnesses is simply not practical and the magnitude of inquiry would preclude any meaningful "trial type" hearing at a preliminary stage. *SEC v. Frank,* 388 F.2d 486 (2d Cir. 1968); *SEC v. Vesco,* 58 F.R.D. 182 (S.D.N.Y.1973); *SEC v. C. A. Morris & Associates,* 386 F.Supp. 1327 (W.D.Tenn.1973); *Sims v. Greene,* 161 F.2d 87 (3rd Cir. 1947); *United States v. Weirton Steel Co.,* 7 F.Supp. 255 (D.Del. 1934); 7 Moore, *Federal Practice,* ¶ 65.-04[3]; 3 Wright and Miller, *Federal Practice & Procedure* § 2949.

28. Additionally, Rule 803(8) of the Federal Rules of Evidence excludes from the prohibitions of the hearsay rule (even where the declarant is available as a witness) any

> [r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies setting forth. . . (C) *in civil actions* and proceedings and against the Government in criminal cases, *factual findings resulting from an investigation* made pursuant to authority granted by law, *unless the sources of information or other circumstances indicate a lack of trustworthiness.* (Emphasis added) Rule 803(8)[4]

■ 29. The SEC is a public agency charged with the responsibility and the authority to investigate possible violations of the federal securities laws. The

---

3. Defendants raised no challenges as to the admissibility of exhibits 1, 2, 16, 17, 19, 32, 34 and 42 appended to the Affidavit of Harold L. Halpern in support of the SEC's motion for preliminary injunction.

4. Mr. Halpern testified at the evidentiary hearing that the exhibits appended to his two

sworn affidavits were gathered by the SEC in the course of its investigation prior to the commencement of this action and subsequently pursuant to discovery. Mr. Halpern was also subject to cross-examination on the manner in which the exhibits had been gathered.

SEC has submitted affidavits and exhibits and transcripts gathered as a result of subpoenas issued in a lawful investigation as well as pursuant to discovery under the Federal Rules of Civil Procedure. The factual findings resulting from the SEC's review of such records are presented in the form of affidavits and transcripts. Under Rule 803(8), such findings are presumptively valid and reliable unless it is determined that the circumstances indicate a lack of trustworthiness as to the information contained therein. There is no evidence to indicate such a lack of trustworthiness.

*The SEC's Affidavits and Supporting Papers Properly Serve as the Basis for the Grant of a Preliminary Injunction.*

■ 30. A preliminary injunction may be granted on the basis of affidavits alone where there is sufficient undisputed evidence to support preliminary relief. *Ross-Whitney Corp. v. Smith Kline & French Lab,* 207 F.2d 190 (9th Cir. 1953); *SEC v. Koenig,* 469 F.2d 198 (2d Cir. 1972); *Herbert Rosenthal Jewelry Corp. v. Grossbardt,* 428 F.2d 551 (2d Cir. 1970); *Waterman-Bic Pen Corp. v. Beisinger Industries Corp.,* 321 F.Supp. 178 (S.D.N.Y.1970).

■ 31. No evidentiary hearing is required where there is no serious dispute as to the facts or where there is little dispute as to the facts but significant dispute as to the inferences to be drawn from those facts; it is only where substantial questions of fact are in sharp dispute that an evidentiary hearing is required. *SEC v. Frank, supra.* There are no substantial questions of fact in sharp dispute here. In opposition to the detailed affidavits of Harold L. Halpern and numerous exhibits appended thereto, defendants offered the conclusory affidavits of five persons including defendants H. Mayer, Dan Mayer and Jorg Haemmerli, which were unsupported by any documentary evidence. Although an evidentiary hearing was not required, the SEC did call Mr. Halpern to the stand to testify and defendants were permitted ample opportunity to cross-examine Mr. Halpern on the substance of his affidavits. Defendants and their affiants were not so available. The SEC promptly moved for a temporary restraining order to enjoin ongoing violations of the Federal securities laws by the defendants. This order was continued by stipulation between the SEC and the defendants until September 27, 1975. The SEC's motion for preliminary injunction in this litigation required expedited treatment.

■ 32. The defendants have refused to provide the SEC with information peculiarly within their possession or under their control concerning their stock ownership and business transactions with GRX. This position adopted by the defendants permits this Court to infer that such information, if disclosed, would be unfavorable to the defendants. *International Union (UAW) v. NLRB,* 148 U.S. App.D.C. 305, 459 F.2d 1329, 1336 (1974).

*Violations*

33. The SEC has made a *prima facie* showing of violations by the defendants of Sections 10(b), 13(a), 13(d) and 14(a) of the Exchange Act and Rules 10b–5, 13a–1, 13d–1, 13d–2, 14a–3 and 14a–9 thereunder and Rule 12b–20.

*Section 10(b) Violations*

■ 34. Where the defendants have and are engaged in a course of conduct designed to conceal from the SEC, GRX's shareholders and the investing public generally, the accumulation by H. Mayer and persons and entities controlled by or affiliated with him, including defendants Dan Mayer, Refrax, Sanbil, Magnesit Holding and Aldo, of as much as 17% of GRX's outstanding common stock, H. Mayer's representation on GRX's board of directors through Otto Griesser and Dan Mayer, and the extensive business dealings between GRX and its subsidiaries and H. Mayer and companies controlled by him, including defendants Refrax, Magnesit Holding and Export, they have violated and are violating Section 10(b) of the Exchange Act and Rule 10b–5

thereunder. Such concealment was effectuated through causing GRX and aiding and abetting GRX to file with the SEC and disseminate to GRX shareholders and the investing public false annual reports and proxy materials, and through the failure to timely file with the SEC and deliver to GRX and national securities exchanges where GRX shares are traded, Schedules 13D and the filing of false Schedules 13D with the SEC.

**35.** Investors are entitled to disclosure of material facts. Material facts within the meaning of Rule 10b–5 are those which a reasonable investor might have considered important in the making of an investment decision. *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 154, 92 S.Ct. 1456, 31 L.Ed. 2d 741 (1972). Material information is defined as that to which a reasonable man would attach importance in determining his choice of action in the transaction in question. Materiality encompasses any fact which in reasonable and objective contemplation might affect the value of the corporation's stock or securities. *List v. Fashion Park, Inc.,* 340 F.2d 457, 462 (2d Cir.), *cert. denied,* 382 U.S. 811, 86 S.Ct. 23, 15 L.Ed.2d 60 (1965). See also, *SEC v. Shapiro,* 494 F.2d 1301 (2d Cir. 1974) ; *SEC v. Texas Gulf Sulphur,* 401 F.2d 833 (2d Cir. 1968).

**36.** That H. Mayer was, personally and through entities controlled by him, a substantial GRX stockholder, had board representation, including through his son, and accounted for a substantial part of GRX's business in Europe and on a world-wide basis through his various companies, and that certain of such business transactions were on their face questionable in nature, were material facts to which an investor might have attached importance in determining whether to buy, sell or hold GRX securities.

**37.** It is not necessary to a finding of violations of Rule 10b–5 that the described business transactions had a nexus with securities transactions. The crux of the violations was the failure to disclose the transactions, stockholdings and board representations in the annual reports, proxy materials and Schedules 13D, based upon which investors might have made investment decisions. Thus, the requirement that the fraud be perpetrated in connection with the purchase or sale of any security was clearly satisfied.

*Section 13(a) and 14(a) Violations*

**38.** The Commission has made a *prima facie* showing that annual reports and proxy materials filed with the Commission and disseminated to GRX shareholders were false and misleading and did not contain information required to be contained therein.

**39.** Material facts are facts which a reasonable stockholder in the process of deciding how to vote might consider important. *Mills v. Electric Auto-Lite Co., supra; Northway, Inc. v. T. S. C. Industries, Inc. et al.,* 512 F.2d 324 (7th Cir. 1975). GRX's transactions in substantial volume with an undisclosed major shareholder who owned and/or controlled the second largest block of GRX stock and who had board representation are material facts that should have been disclosed to enable stockholders to appraise their corporation and its management and vote their shares intelligently. The failure to disclose information specifically required to be disclosed under Item 7(f) of Schedule 14A and Item 15 of Form 10–K constituted violations of Sections 13(a) and 14(a) of the Exchange Act and Rules 13a–1 and 14a–3 thereunder. *SEC v. Kalvex, Inc.,* CCH Fed.Sec.L.Rep. [Current Binder] ¶ 95, 226 (S.D.N.Y., July 7, 1975) ; *SEC v. Union Corp. of America,* 205 F.Supp. 518, 522 (E.D.Mo.1962), *aff'd sub nom., Union Corp. of America v. SEC,* 309 F.2d 93 (8th Cir. 1962) ; *SEC v. Atlas Tack Corp.,* 93 F.Supp. 111, 115 (D.Mass. 1950).

**40.** The business dealings with H. Mayer, his board representation and his

stockholdings were material facts. The failure to disclose these material facts in annual reports and proxy materials filed and disseminated from 1965 through 1975 also rendered them materially misleading to GRX's shareholders in violation of Sections 13(a) and 14(a) of the Exchange Act and Rules 13a–1 and 14a–9 thereunder and Rule 12b–20.

41. H. Mayer, Dan Mayer and the foreign corporate defendants exercised a degree of influence and control over GRX and concealed the amount of their shockholdings from GRX and accordingly have caused GRX and have aided and abetted GRX in the concealment of such shockholdings and business transactions. *SEC v. Kalvex, Inc., supra; Brennan v. Midwestern United Life Insurance Co.,* 417 F.2d 147 (7th Cir. 1969).

*Section 13(d) Violations*

■ 42. Defendants H. Mayer, Dan Mayer, Sanbil, Refrax, Magnesit Holding and Aldo have violated and are continuing to violate Section 13(d) of the Exchange Act and Rules 13d–1 and 13d–2 thereunder by failing to timely file and deliver and by failing to file or deliver with the SEC and to GRX and the New York and PBW Stock Exchanges the Schedules 13D required of them. Defendants also violated and continue to violate such section and rules by making false statements and omitting to make disclosures in a Schedule 13D and two amendments thereto filed by Sanbil.

43. Section 13(d) was enacted for the purpose, among other things, of informing the investing public, as well as the issuer itself, of important information concerning any person or *group of persons* who acquire more than five percent of the outstanding securities of a public company whose securities are registered under Section 12 of the Exchange Act, as is GRX stock. *Full Disclosure of Corporate Equity Ownership and in Corporate Takeover Bids,* S.Rep. No.550, 90th Cong., 1st Sess. (1967); *Disclosure of Corporate Equity Ownership,* H.R.Rep.No.1711, 90th Cong., 2d

Sess. (1968), U.S.Code Cong. & Admin. News 1968, p. 2811. Section 13(d)(3) was enacted in order to identify to the public market place those persons acting as a partnership, limited partnership, syndicate or other group for the purpose of acquiring, holding, or disposing of securities of an issuer. Such a syndicate or group is deemed to be a "person" for purposes of the Section 13(d) reporting requirements.

44. A group was formed for the purpose of acquiring and/or holding GRX securities. That group consisting of H. Mayer, Dan Mayer, Sanbil, Refrax, Magnesit Holding and Aldo was under the common control and/or ownership of H. Mayer, who, with Dan Mayer, directed the stock purchasing activities of ' the foregoing entities.

45. At least as early as October 12, 1972, H. Mayer, Dan Mayer, Refrax, Sanbil, Magnesit Holding and Aldo held or purchased, as a "group", in excess of five percent of GRX's outstanding common shares, and were therefore required by at least October 22, 1972, to have filed a Schedule 13D with the Commission and delivered it to GRX and the New York and PBW Stock Exchanges. None was filed in violation of Section 13(d) and Rule 13d–1. Substantial increases in holding of GRX shares acquired by Sanbil and Refrax from February 1973 through 1974 constituted material changes in the facts required to have been disclosed in the original required Schedule 13D, and, therefore, pursuant to Rule 13d–2, amendments to the original required Schedule 13D were required to be filed and delivered. None was filed in violation of Section 13(d) and Rule 13d–2.

■ 46. Sanbil's three 13D filings misstated and omitted to state facts required under items of the Schedule itself, and omitted to state such further material information as was necessary to make the required statements, in the light of the circumstances under which they were made, not misleading. Rule 12b–20. All information set forth in a

Schedule 13D must be true and accurate and cannot contain a false or misleading statement. *GAF Corp. v. Milstein,* 453 F.2d 709 (2d Cir. 1972). The Schedule 13D filed by Sanbil on or about December 23, 1974 was not true and accurate in that it failed to disclose the existence and identities of members of the "group" consisting of Sanbil, Refrax, H. Mayer, Dan Mayer, Magnesit Holding and Aldo which acquired an amount of GRX shares in excess of the amount disclosed in the Sanbil filing, failed to disclose the true amounts of Sanbil's and the "group's" purchases and holdings, failed to disclose the relationships of members of the group to H. Mayer and to each other, failed to disclose the control person's, i. e., H. Mayer's, material occupations, positions, offices and employments during the past 10 years, failed to disclose the identities of the controlling persons of Sanbil, failed to disclose the extensive business dealings between H. Mayer's and H. Mayer's companies and GRX and its subsidiaries and failed to disclose that H. Mayer was represented on GRX's board since 1965. The subsequent filings by Sanbil on February 10, 1975, and on March 25, 1975, were also deficient.

*Relief*

47. The SEC has made a strong *prima facie* showing that there is a substantial likelihood of future violations of the Federal securities laws on the part of the defendants, and that there are ongoing violations of the Federal securities laws by these defendants sufficient to warrant the grant of a preliminary injunction enjoining defendants H. Mayer, Dan Mayer, Refrax, Sanbil, Magnesit Holding and Export from further violations of Sections 10(b), 13(a) and 14(a) of the Exchange Act and Rules 10b–5, 13a–1, 14a–3 and 14a–9 thereunder and Rule 12b–20 and enjoining defendants H. Mayer, Dan Mayer, Refrax, Sanbil and Magnesit Holding from further violations of Section 13(d) of the Exchange Act and Rules 13d–1 and 13d–2 thereunder.

48. In addition to preliminarily enjoining the defendants from further violations of the Federal securities laws, the SEC has also shown a need for certain ancillary relief, including a prohibition against any further acquisitions of GRX stock by the defendants, sales of GRX stock owned and/or controlled by the defendants and a sterilization of voting rights as to those shares. See, *Twin Fair, Inc. v. Reger et al.,* 394 F.Supp. 156 (W.D.N.Y., 1975).

49. Defendants contend that *De Beers Consolidated Mines, Ltd. v. United States,* 325 U.S. 212, 65 S.Ct. 1130, 89 L.Ed. 1566 (1945) prohibits restrictions on their ability to dispose of their GRX shares. Defendants' reliance on *De Beers, supra,* is misplaced and the requested ancillary relief should be granted. The United States, in *De Beers,* sought to freeze assets to provide security to assure that assets would be available in the event a fine was imposed for contempt of the injunctive decree the United States was seeking. The United States was not there seeking the return of monies to any party from whom monies were wrongfully deprived or the disgorgement of benefits from parties who had wrongfully obtained them. The Supreme Court noted that the district court had no jurisdiction under the Sherman Act to order a money judgment but only had power to restrain conduct in violation of the Act. However, the SEC is seeking disgorgement of benefits wrongfully obtained. Preliminarily, the SEC is seeking the freezing of certain specific assets that are clearly related to the alleged scheme in order to assure a source to satisfy that part of the final judgment which might be ordered specifically by this Court. It appears likely that the SEC will show at a full trial on the merits that GRX was injured and wrongfully deprived of benefits by the defendants. While in *De Beers* defendants may have been irreparably harmed in that they may not have been able to do business while their bank accounts and machinery were frozen, no such showing

has been made here that the defendants' business would be similarly affected.

■ ■ 50. It has long been recognized that courts, pursuant to their general equity powers, may order ancillary relief, including disgorgement of monies or other benefits received, in SEC injunctive actions brought pursuant to Section 21(e) of the Securities Exchange Act of 1934 so as to prevent defendants from profiting from their illegal conduct. *Chris-Craft Industries, Inc. v. Piper Aircraft Corp.*, 480 F.2d 341 (2d Cir. 1973); *SEC v. Shapiro*, 494 F.2d 1301 (2d Cir. 1974); *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1105–06 (2d Cir. 1972); *SEC v. Texas Gulf Sulphur*, 446 F.2d 1301, 1307 (2d Cir. 1971); *SEC v. S & P National Corp.*, 360 F.2d 741, 750 (2d Cir. 1966); *SEC v. Weisberger*, CCH Fed.Sec.L.Rep. ¶ 95,108 [Current Binder] (S.D.N.Y. May 29, 1975); *SEC v. R. J. Allen & Associates, Inc.*, 386 F.Supp. 866 (S.D. Fla.1974); *SEC v. Gerson Blatt, et al.*, 74–1139–Civ.–JLK (S.D.Fla., July 24, 1975). It has been specifically recognized that a freeze of assets may be appropriate to assure compensation to those who are victims of a securities fraud. *International Controls Corp. v. Vesco, supra; SEC v. R. J. Allen & Associates, Inc., supra.*

51. The prohibition against the sale of the defendants' GRX shares pending a hearing on the final judgment of permanent injunction also serves to maintain the *status quo pendente lite* which is one of the primary functions of preliminary injunctive relief. Any dividends paid on such shares during the pendency of the preliminary injunction will not be subject to any restrictions imposed by that order.

### JUDGMENT OF PRELIMINARY INJUNCTION AND OTHER RELIEF

Plaintiff Securities and Exchange Commission, having filed a complaint for injunction and other relief in this matter and having moved for preliminary relief and the Court having considered the pleadings, the affidavits, the exhibits, the evidence and having heard argument at a hearing in this matter on September 18 and 19, 1975 and for the reasons assigned in the Court's Findings of Facts and Conclusions of Law filed on September 23, 1975.

It is ordered, adjudged and decreed that pending a final determination upon the merits of this action, the defendants Hermann Mayer ("H. Mayer"), Dan Mayer, Sanbil Handels Anstalt ("Sanbil"), Refrax Handels Anstalt ("Refrax"), Magnesit Holding A. G. ("Magnesit Holding"), and A. G. Fuer Magnesit Export ("Export"), their officers, directors, agents, servants, partners, employees, successors, assigns, affiliates and subsidiaries and each of them and those persons in active concert or participation with them, are hereby restrained and enjoined from, directly or indirectly, singly or in concert, making use of the mails or the means and instruments of transportation or communication in interstate commerce, or of any facility of any national securities exchange, in connection with the purchase or sale of the securities of General Refactories Company ("GRX") or any other issuer by:

1. Employing any scheme, device or artifice to defraud;

2. Making any materially false and misleading statement or omitting to state any material fact necessary in order to make statements made, in the light of the circumstances under which they were made, not misleading; and

3. Engaging in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in violation of Section 10(b) of the Exchange Act, 15 U.S.C. 78j(b), and Rule 10b–5, 17 CFR 240.10b–5, thereunder.

It is further ordered, adjudged and decreed that pending a final determination upon the merits of this action the defendants H. Mayer, Dan Mayer, Sanbil,

Refrax, Magnesit Holding, and Export, their officers, directors, agents, servants, partners, employees, assigns, affiliates, and subsidiaries and each of them and those persons acting in concert or participation with them are hereby restrained and enjoined from, directly or indirectly, singly or in concert, filing and causing to be filed with the Commission false and misleading annual reports on Form 10–K and annual reports which do not disclose information required to be disclosed on Form 10–K with respect to GRX or any other issuer, in violation of Section 13(a) of the Exchange Act, 15 U.S.C. 78m(a), and Rule 13a–1, 17 CFR 240.13a–1, thereunder, and Rule 12b–20, 17 CFR 240.12b–20.

It is further ordered, adjudged and decreed that pending a final determination upon the merits of this action the defendants H. Mayer, Dan Mayer, Sanbil, Refrax and Magnesit Holding, their officers, directors, agents, servants, employees, partners, affiliates, subsidiaries, successors and assigns and each of them and those persons in active concert or participation with them, are hereby restrained and enjoined from, directly or indirectly, singly or in concert, failing and aiding and abetting the failure to timely file and deliver reports on Schedule 13D and amendments to reports on Schedule 13D and from filing and delivering and aiding and abetting the filing and delivery of false and misleading reports on Schedule 13D and amendments to reports on Schedule 13D, with respect to securities of GRX or any other issuer, in violation of Section 13 (d) of the Exchange Act, 15 U.S.C. 78 m(d), and Rules 13d–1 and 13d–2, 17 CFR 240.13d–1 and 240.13d–2, thereunder.

It is further ordered, adjudged and decreed that pending a final determination upon the merits of this action the defendants H. Mayer, Dan Mayer, Sanbil, Refrax, Magnesit Holding and Export, their officers, directors, employees, agents, partners, servants, affiliates, subsidiaries, successors and assigns and each of them and those persons in active concert or participation with them, are hereby restrained and enjoined from, directly or indirectly, singly or in concert, filing or causing to be filed with the Commission and soliciting proxies by means of any proxy statement, form of proxy, notice of meeting or other oral or written communication, which at the time and in light of the circumstances under which such filings and solicitations are made, are false and misleading with respect to material facts and which omit to state material facts necessary in order to make the statements therein not false and misleading, or from making solicitations of proxies in which persons solicited are not furnished with written proxy statements containing the information specified in Schedule 14A, in violation of Section 14 (a) of the Exchange Act, 15 U.S.C. 78n (a), and Rules 14a–3 and 14a–9, 17 CFR 240.14a–3 and 240.14a–9, thereunder.

It is further ordered, adjudged and decreed that pending a final determination upon the merits of this action the defendants H. Mayer, Dan Mayer, Sanbil, Refrax, and Magnesit Holding, their officers, directors, employees, partners, agents, servants, affiliates, subsidiaries, successors and assigns, and each of them, and those persons in active concert or participation with them, are hereby restrained and enjoined from, directly or indirectly, singly or in concert, selling, transferring, pledging, hypothecating, delivering, loaning or otherwise disposing of or encumbering or voting any securities of GRX owned directly or indirectly of record or beneficially and/or controlled by H. Mayer, Dan Mayer, Refrax, Sanbil and Magnesit Holding, provided, however, that payment of any dividends by GRX on shares subject to this Judgment shall not be restricted by any terms of this Judgment.

It is further ordered, adjudged and decreed that pending a final determination upon the merits of this action the defendants H. Mayer, Dan Mayer, San-

bil, Refrax Magnesit Holding, and Export, their officers, directors, employees, partners, agents, servants, affiliates, subsidiaries, successors and assigns, and each of them and those persons in active concert or participation with them, are hereby restrained and enjoined from purchasing or otherwise acquiring, directly or indirectly, any additional GRX shares.