**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**IMC INTERNATIONAL, INC., and Samuel C. Evans, Defendants.**

**Civ. A. No. CA 3–6166–C.**

United States District Court,
N. D. Texas,
Dallas Division.

Jan. 18, 1974.

Robert F. Watson, Richard M. Hewitt and Daniel R. Kirshbaum, Securities and Exchange Commission, Fort Worth, Tex., for plaintiff.

John A. Spinuzzi, Dallas, Tex., for receiver, James S. Mahon.

Philip I. Palmer, Jr., Palmer, Palmer & Coffee, Dallas, Tex., for Evans.

## MEMORANDUM OPINION

WILLIAM M. TAYLOR, JR., Chief Judge.

The Securities and Exchange Commission instituted this action by filing its Complaint on August 8, 1972, seeking to enjoin Defendant IMC International, Inc. ("IMC") from failing to comply with the requirement of Sections 13(a) and 14(f) of the Securities Exchange Act of 1934 ("Exchange Act"), as amended [15 U.S.C. § 78m(a) and 78n(f)] and Rules 13a–1, 13a–11, 13a–13, and 14f–1 promulgated thereunder [17 C.F.R. 240.13a–1, 240.13a–11, 240.-13a–13, and 240.14f–1], and seeking to enjoin Defendant Samuel C. Evans ("EVANS") from failing to comply with the requirements of Sections 13(d)(1) and 16(a) of the Exchange Act, as amended [15 U.S.C. §§ 78m(d)(1) and 78p(a)] and Rules 13d–1 and 16a–1 promulgated thereunder [17 C.F.R. 240.13d–1 and 240.16a–1]. The Complaint alleged that the defendants had wilfully failed to file with the Securities and Exchange Commission timely, complete and accurate reports and documents as required by the above cited provisions.

The plaintiff's Motion for Preliminary Injunction was consolidated with the trial on the merits, which was heard by the Court on September 19 through 22, 1972. At the trial, the defendants appeared personally and through their attorneys, several witnesses testified, numerous documents were admitted into evidence, and the issues raised by plaintiff's Complaint were explored before the Court. Subsequent to the evidentiary portion of the trial, the parties submitted briefs summarizing the evidence adduced and the law applicable thereto and presented final arguments on October 25, 1972.

Thereafter, plaintiff filed a Supplemental Complaint alleging that IMC had continued its failure to comply with the reporting provisions of the Exchange Act and that IMC was insolvent and requesting the appointment of an equitable receiver for IMC. This Court entered an order appointing James S. Mahon as receiver on May 8, 1973. Shortly thereafter, a petition was filed in this Court placing IMC into involuntary bankruptcy.

After consideration of the pleadings, evidence adduced at trial, arguments of counsel, and briefs exploring the issues raised by plaintiff's Complaint, the Court entered an order on December 20, 1973 permanently enjoining Defendants IMC and Evans from failing to file with the Securities and Exchange Commission timely, accurate and proper reports and documents in contravention of the above cited provisions of the Exchange Act. In support of this order, the Court hereby finds as follows:

This Court has jurisdiction of the subject matter and the parties under Sections 21(f) and 27 of the Exchange Act, as amended [15 U.S.C. §§ 78u(f) and 78aa].

IMC is the issuer of a class of common stock that has been registered with the Commission under Section 12 of the Exchange Act since March, 1970. Consequently, IMC has been subject since that date to the reporting requirements of Sections 13(a) and 14(f) of the Exchange Act and the Rules promulgated thereunder. Likewise, every person affiliated with IMC in the manner described in Sections 13(d) and 16(a) of the Exchange Act has been subject to the filing requirements of the Rules promulgated under those sections since the date of IMC's registration with the Commission.

Evans was a control person of IMC from September 23, 1970 until August 31, 1972 through his ownership of not less than approximately 30% of the outstanding stock of IMC.

Section 13(a) of the Exchange Act requires the filing of "(1) such information and documents . . . as the Commission shall require to keep reasonably current the information and documents required to be included in or filed with an application or registration statement filed pursuant to Section 12 . . . " and "(2) such annual reports . . . and such quarterly reports . . . as the Commission may prescribe." IMC was required by Rule 13a–1 promulgated under Section 13(a) to file an annual report on Form 10–K for each of the fiscal years following the effectiveness of its registration; it was required by Rule 13a–13 (as amended on October 28, 1970, effective December 31, 1970) promulgated under Section 13(a) to file quarterly reports on Form 10–Q for the first three quarters of each fiscal year subsequent to the effective date of the amendment; and it was required by Rule 13a–11 promulgated under Section 13(a) to file current reports on Form 8–K for certain months containing material information regarding recent corporate events.

From the inception of its reporting obligations to the filing of this lawsuit, IMC demonstrated a marked inability to comply with the reporting requirements of Section 13(a). During that time, IMC was required to file two annual reports on Form 10–K and five quarterly reports on Form 10–Q. None of those reports were filed timely and several of them were filed in excess of 200 days late with the average delinquency approximating 128 days. Likewise, none of the current reports required to be filed on Form 8–K were timely filed by IMC.

The most flagrant untimely filing violation involved the Form 8–K report of IMC for the month ended September 30, 1970. On September 29, 1970, IMC, under its predecessor name, Humanics, Inc., issued 1,718,000 shares of its stock in exchange for the assets and liabilities of International Music Corporation, a Texas corporation organized and con-trolled by Evans. However, the Form 8–K report disclosing this transaction was not filed until February 1, 1971, thus depriving the investing public of any information whatsoever concerning the change in control of IMC for a total of 114 days.

As a result of this transaction, International Music Corporation was dissolved and the stock of IMC (then Humanics, Inc.) was distributed to its shareholders thereby causing Evans to become the beneficial owner of approximately 30% of the outstanding stock of IMC.

On September 23, 1970, Evans purchased 82,000 shares of IMC stock (then Humanics, Inc.) from control persons of IMC for approximately $27,000, which purchase represented approximately 14% of the then outstanding stock.

In connection with the purchase by Evans on September 23, 1970 and the issuance of IMC stock to International Music Corporation on September 29, 1970, Evans caused an entire new board of directors to be appointed and new officers to be elected.

On March 23, 1971, Evans sold the 82,000 shares of IMC stock to an individual investor for a consideration of $123,000.

Section 14(f) of the Exchange Act provides that "If, pursuant to any arrangement or understanding with the person or persons acquiring securities in a transaction subject to subsection (d) of Section 13 of this title, any persons are to be elected or designated as directors of the issuer, otherwise than at a meeting of security holders, and the persons so elected or designated will constitute a majority of the directors of the issuer . . . " then the issuer must file with the Commission certain information designated by Rule 14f–1 promulgated thereunder. The purchase by Evans on September 23, 1970 was a transaction subject to Section 13(d) of the Exchange Act. This fact, together with the facts that Evans caused a complete new board of directors to be in-

stalled and no meeting of the shareholders was called to approve the new directors, triggered the provisions of Section 14(f) which required the filing of a report. Yet, this was never done by IMC.

Section 13(d)(1) of the Exchange Act and Rule 13d–1 thereunder, and Section 16(a) of the Exchange Act and Rule 16a–1 thereunder, require every person who is the beneficial owner of more than a certain percentage of any class of equity security which is registered pursuant to Section 12 of the Exchange Act to file a report of his transactions in such securities with the Commission contemporaneously with the time that he becomes such beneficial owner and thereafter when changes in such ownership occur. Evans was clearly required to file a report with the Securities and Exchange Commission concerning his purchase of IMC stock on September 23, 1970 and his subsequent sale of that stock on March 23, 1971. Yet, no such reports were filed.

Defendant IMC continued to violate the reporting requirements under Section 13(a) of the Exchange Act after the institution of this lawsuit by failing to file a timely annual report on Form 10–K and two quarterly reports on Form 10–Q.

The failure of timely disclosure by IMC and the non-disclosure by Evans constituted wilful violations in that they were designed to present information in the light most favorable to the company while omitting any information of a detrimental nature about the background of the company or its control persons and management. This concealment deprived the investing public of facts that were material in the sense that a reasonable investor would have considered them important in making an investment decision. Securities and Exchange Commission v. Koenig et al., CCH F.2d L.Rep. Para. 93,536 (S.D.N.Y., June 20, 1972), affirmed, 469 F.2d 198 (2nd Cir., 1972). The evidence in this case indicates that IMC and Evans will, unless enjoined, continue to engage in the acts and practices set forth in the Complaint.

The conclusions reached by the House Committee on Interstate and Foreign Commerce emphasize the important function of the reporting provisions of the Exchange Act:

"The hiding and secreting of important information obstructs the operation of the markets as indices of real value . . . Delayed, inaccurate and misleading reports are the tools of the unconscionable market operator and the recreant corporate official who speculates on inside information . . . The reporting provisions . . . are a very modest beginning to afford that long delayed aid . . . in the way of securing proper information for the investors." H. R.Rep. No. 1383, 73rd Cong., 2nd Sess., p. 13 (1934).

The reporting provisions of the Exchange Act are clear and unequivocal, and they are satisfied only by the filing of complete, accurate and timely reports. It would be hard to find a clearer record of continuous conscious evasion than the one presented by the conduct of these defendants in the instant case. SEC v. Golconda Mining Co., 291 F.Supp. 125, 129 (S.D.N.Y., 1968).

Once the Court determines that the plaintiff has proven a violation of the statute, the proper test for the issuance of a statutory injunction is whether there is reasonable expectation of further violations by such defendants. SEC v. Broadwall Securities, Inc., 240 F.Supp. 962, 969 (S.D.N.Y., 1965); SEC v. Culpepper, 270 F.2d 241, 249 (2nd Cir., 1959); SEC v. Boren, 283 F. 2d 312 (2nd Cir., 1960); United States v. Parke, Davis & Co., 362 U.S. 29, 48, 80 S.Ct. 503, 4 L.Ed.2d 505 (1960), 365 U.S. 125, 81 S.Ct. 433, 5 L.Ed.2d 457 (1961); SEC v. MacElvain, 417 F.2d 1134, 1137 (5th Cir., 1969), cert. denied, 397 U.S. 972, 90 S.Ct. 1087, 25 L.Ed. 2d 265 (1970).

■■ Not only were the reports of IMC filed in an untimely manner, but they also contained numerous inaccurate and misleading statements. For example, while the reports of IMC mentioned the prior association of certain of its officers with another publicly held company, there was no disclosure that that company had entered bankruptcy and had been enjoined from violating the federal securities laws. It is clear that information concerning the background of management was required to be disclosed. It is equally clear that when a registrant includes that information in the filing, there is an obligation to set it forth accurately. In Re Emporia Gold Mines, Inc., 2 SEC 209, 216 (1937); In Re Paper Sales Co. of Detroit, Inc., 2 SEC 748, 754 (1937); In Re Resources Corporation International, 7 SEC 689, 733 (1940); In Re Chain Stores Depot Corp., 7 SEC 1015, 1022 (1940). Another example of inaccurate reporting by IMC was its failure to disclose the institution of a lawsuit against it in June, 1971 challenging the patent which formed the very basis for its business activities. This was a material fact which the shareholders and the investing public had a right to know. In Re Automatic Telephone Dealer, Inc., 10 SEC 698 (1941).

■■ The Courts have consistently held that the continuous failure to comply with the Commission's reporting requirements warrants the grant of an injunctive decree. SEC v. Realty Equities Corp. of New York, CCH Fed.Sec.L. Rep., Para. 93,545 (D.C.D.C., June 15, 1972); SEC v. Atlas Tack Corp., 93 F. Supp. 111 (D.Mass., 1950); SEC v. Union Corp. of America, 205 F.Supp. 518 (E.D.Mo., 1962), affirmed, 309 F.2d 93 (8th Cir., 1962). Not only may the threat of future violations of the securities laws be properly inferred from past violations, but such an inference is significantly strengthened, where, as here, no attempt is made by the defendants to cease their violations even after the institution of an injunctive action. United States v. Parke, Davis & Co., supra, 362 U.S. at pp. 47–48, 80 S.Ct. 503; SEC v. MacElvain, supra, 417 F.2d at p. 1137.

■ This injunction serves only to require observance by the defendants of the relevant provisions of the federal securities laws. It imposes no hardship or sanction whatsoever unless compliance with the law is deemed to be a hardship or a sanction. Mitchell v. Pidcock, 299 F.2d 281, 287 (5th Cir., 1962). When it is clearly shown that violations have occurred, the manifest difficulty of the Government's inspecting, investigating and litigating every complaint of a violation weighs heavily in favor of enforcement by injunction in this circuit, particularly since the statutory injunction is the basic tool provided the Commission for requiring compliance with the reporting provisions of the Exchange Act. The continuing assertion by the defendants of the correctness of their behavior and the insignificance of the delinquent filing violations in the face of a strong Congressional mandate to the contrary, demonstrates even more clearly the need for injunctive relief. Mitchell v. Pidcock, supra at p. 287; SEC v. MacElvain, supra, 417 F.2d at p. 1137; Goldberg v. Cockrell, 303 F.2d 811, 813 (5th Cir., 1962); SEC v. Culpepper, supra, 270 F.2d at pp. 250–251.

It is hereby ordered, adjudged and decreed that this Memorandum Opinion shall be filed with and annexed to the Order of Permanent Injunction entered by the Court on December 20, 1973 and, to the extent required by Rule 65(d), Federal Rules of Civil Procedure, may be considered as Findings of Fact and Conclusions of Law in support of said Order.