**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

**v.**

**CARRIBA AIR, INC.; Marvin Winograde; Gertrude Pollard; Richard Williams; and Frederick H. Rehm, III, Defendants.**

Civ. A. No. C80–1918A.

United States District Court, N. D. Georgia, Atlanta Division.

Nov. 17, 1980.

On Motion For Preliminary Injunction Feb. 27, 1981.

Joseph L. Grant, Barton S. Sacher and Steven J. Gard, Atlanta, Ga., for plaintiff.

Martin Zerobnick, Brenman, Epstein, Zerobnick, Raskin & Friedlob, Denver, Colo., for defendants.

## ORDER

ROBERT H. HALL, District Judge.

Plaintiff, Securities and Exchange Commission ("Commission"), has filed its Verified Complaint herein, seeking *inter alia*, a Temporary Restraining Order, Preliminary and Permanent Injunctions, and the imposition of a constructive trust, respecting defendants Carriba Air, Inc., Marvin Winograde, Gertrude Pollard, Richard Williams and Frederick H. Rehm, III, alleging violations of Section 17(a) of the Securities Act of 1933, as amended [15 U.S.C. § 77q(a)] and Section 10(b) of the Securities and Exchange Act of 1934 [15 U.S.C. § 78j(b)] and Rule 10b–5 thereunder [17 C.F.R. 240.10b–5].

This cause arises and was heard, after due notice to defendants, on the motion of plaintiff for a temporary restraining order and for an order imposing a constructive trust over certain funds. Based upon the verified pleadings filed to date, the sworn transcripts of testimony of the individual defendants, and the Memorandum of Law filed in support of plaintiff's motion, this Court finds it has jurisdiction of the subject matter of this action and that venue is properly posited in this jurisdiction.

Based upon the brief and supporting documents filed by defendant Carriba Air, Inc., this Court finds that no immediate and irreparable injury, loss or damage will result to the public prior to the time this Court has a hearing on the motion for a preliminary injunction.

The motion of the plaintiff for a temporary restraining order and for an order imposing a constructive trust over certain funds is DENIED.

1. Exhibit 1, pp. 94, 104; and Exhibit 3, p. 32.

2. Exhibit 1, pp. 153, 158.

## MEMORANDUM ORDER

On Motion For Preliminary Injunction

This cause was heard on January 12, 13 and 14, 1981, upon Plaintiff Securities and Exchange Commission's ("Commission") Motion for Preliminary Injunction against Defendants Carriba Air, Inc. ("Carriba"), Marvin Winograde, Gertrude Pollard, Richard Williams, and Frederick Rehm, seeking to enjoin Defendants from violating Section 17(a) of the Securities Act of 1933 ("Securities Act"), Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b–5 promulgated thereunder by the Commission.

After considering the Commission's Verified Complaint, the sworn transcripts of testimony of the individual Defendants herein (taken with counsel of their choosing present who were afforded an opportunity to cross-examine), the oral testimony of two witnesses for the Commission and four witnesses who testified on behalf of Defendants (including Defendant Winograde), and the Exhibits which were introduced into evidence during oral examination conducted during the evidentiary hearing on the Motion for Preliminary Injunction, the Court enters its Findings of Fact and Conclusions of Law as follows:

## 1. BACKGROUND

Carriba was incorporated in Colorado in mid-1980, having succeeded Air West Indies, Inc., a Colorado corporation which succeeded to Air West Indies, Inc., a de facto corporation of Puerto Rico.[1] Carriba was formed for the purpose of conducting commuter airline and charter services from its base in San Juan, Puerto Rico to St. Thomas in the Virgin Islands and other Caribbean destinations.[2] Carriba was conceived and promoted by Defendants Winograde, Pollard and Williams.[3] After establishing a basic business plan, these Defendants began hiring employees for Carriba and attempted

3. Exhibit 1, pp. 82–86; Exhibit 2, pp. 20–24, 38, 45–46; and Exhibit 3, pp. 14, 15, 23, 26, 27.

to acquire aircraft and operating equipment.[4] Defendant Rehm was hired as President of Carriba by Defendant Williams after consultations with Defendants Winograde and Pollard;[5] and Defendants Winograde, Pollard and Williams hired Michael Smith to secure Carriba's operating certificate from the Federal Aviation Administration ("FAA"), to provide FAA regulatory compliance work and to assist in acquiring Carriba's aircraft.[6] Defendant Williams and Smith located aircraft and executed acquisition contracts on behalf of Carriba with the permission of Defendants Winograde and Pollard,[7] who comprised a majority of Carriba's three-person Board of Directors.[8] Rafael Facundo was hired as Carriba's Director of Operations by Defendants Winograde, Pollard and Williams.[9] Defendant Williams and Facundo began hiring operating personnel with the approval of Defendants Winograde and Pollard.[10] Defendant Winograde became Carriba's Vice President, even though he resided in California.[11] Defendant Pollard became Carriba's Secretary-Treasurer.[12] During Pollard's periodic absences from Puerto Rico, and Winograde's continuing absence from the scene, Defendant Williams was primarily responsible for Carriba's operation.[13] Defendants Winograde and Pollard contributed cash and services to Carriba's start-up which they valued as totalling $28,000.00.[14] Thereafter, the individual Defendants, acting on behalf of Carriba, sought to secure financing through a public offering of equity securities.[15] Through personal contacts they met with representatives of Securities Clearing of Colorado, Inc. ("SCCI"), a broker-dealer, and secured the representation of the law firm of Brenman, Epstein, Zerobnick, Raskin & Friedlob, P.C. ("the Brenman law firm"), both of which were located in Denver, Colorado.[16] Carriba, acting through Defendants Pollard and Winograde, with the assistance of Defendant Williams, offered and sold common stock to investors through a private placement of securities pursuant to Commission Rule 146 in reliance upon the exemption contained therein from registration.[17] The purpose of this private placement was to secure needed operating capital and the funds necessary to pay the fees and expenses which were needed for Carriba to offer additional common stock through a public offering.[18] Carriba retained the Brenman firm, which consulted with the individual Defendants and others who provided the information necessary to prepare the private placement memorandum ("PPM"),[19] and which then filed a Rule 146 Statement with the Commission. The PPM was circulated to private investors, who invested approximately $140,-000.00 and received 3,500,000 shares of Carriba's common stock in return.[20] Winograde and Pollard continued as Carriba's majority shareholders, however, holding 16,-649,054 shares of Carriba common stock.[21]

4. Exhibit 1, pp. 85, 88, 139, 165.

5. Exhibit 1, p. 101.

6. Carriba entered into a contract with Airline Consultants, a sole proprietorship operated by Smith and his wife, Gloria, from their apartment in Puerto Rico, to provide certain services related to FAA compliance. Exhibit 2, p. 24–25; and Exhibit 3, pp. 76–81.

7. Exhibit 1, pp. 108–111; Exhibit 2, pp. 56–58.

8. Exhibit 5–2, p. 21.

9. Exhibit 1, p. 107.

10. Exhibit 4, pp. 32–36.

11. Exhibit 5–2, p. 22.

12. Exhibit 2, p. 55.

13. Exhibit 1, p. 160; Exhibit 2, pp. 28, 37–38.

14. Exhibit 1, pp. 136–137; and Exhibit 2, p. 45.

15. Exhibit 1, pp. 156–116; and Exhibit 3, pp. 58–71.

16. Exhibit 3, p. 34.

17. Exhibit 1, pp. 86–87, 116, 137; and Exhibit 3, pp. 58–59.

18. Exhibit 3, p. 59.

19. Exhibit 3, pp. 58, 71; and Exhibit 1, pp. 114–116.

20. Exhibit 3, p. 57.

21. Exhibit 5–2, pp. 5, 25.

Defendant Pollard formed a Cayman Islands corporation, hired her son, Defendant Williams, as its principal employee and entered into a contract to perform management and sales services for Carriba.[22] Defendant Winograde and Joseph Peatman, a business associate of Winograde, who had purchased Carriba stock in the private placement and became a Director of Carriba, entered into various contracts with Carriba relating to the purchase, sale and lease-back of Carriba's aircraft and provided the airplanes to Carriba.[23]

Defendant Pollard's corporation, Aviation Management & Sales ("AM&S"), began to receive $3,600.00 per month, which was increased to $10,000 per month in June of 1980.[24] Defendant Winograde was to receive $3,000.00 per month for his services as Carriba's Vice President, plus additional amounts relating to the aircraft acquisition.[25]

On May 30, 1980, Carriba filed a Form S–18 Registration Statement with the Commission's Atlanta Regional Office, thereby beginning the registration process necessary to issue securities for sale to public investors. The Form S–18 Registration Statement (Exhibit 5–4) and numerous Exhibits thereto (Exhibit 5–5) were prepared by the Brenman law firm in conjunction with SCCI, the proposed lead Underwriter. The Registration Statement closely resembled, and contained similar information to that contained in, the previously circulated Private Placement Memorandum. It was filed with the Commission and revised periodically during the registration process. Each of the individual defendants herein have testified that they supplied information to the Brenman law firm and SCCI, the Underwriter, for use in preparing the various legal documents necessary to effectuate a public issue of securities.[26] Moreover,

each of the individual defendants testified that they received and reviewed each of these documents as they were periodically revised.[27] In addition, each of the individual defendants testified that they reviewed the final Prospectus which became effective and was circulated to the investing public on or about August 29, 1980.[28] Pursuant to the Underwriting Agreement contained within Exhibit 5–5, during the month of September 1980, 12,000,000 shares of Carriba common stock were offered and sold to members of the investing public.

In late September 1980, it came to the attention of the Commission's enforcement personnel in the Atlanta Regional Office that Carriba's Prospectus and Form S–18 Registration Statement may have been false and misleading. Very shortly thereafter, on September 30, 1980, Commission enforcement personnel assigned to this matter met with members of the Brenman law firm, who represented Carriba, and a partner of the Denver law firm representing SCCI, Carriba's underwriter. During this meeting, the attorneys agreed to produce the individual defendants herein for oral testimony on October 8 and 9, 1980. On those dates, the Commission enforcement personnel took the sworn testimony of defendants Winograde, Pollard, Williams and Rehm. Each witness was sworn by a Notary Public, was accompanied by a partner of the Brenman law firm (who were afforded an opportunity to confer with the witnesses during the examination and, further, to elicit questions upon cross-examination, which privilege was exercised during the taking of each of the transcripts of testimony), and a transcript of testimony of each witness was prepared by a certified court reporter (Exhibits 1, 2, 3 and 4). During this testimony, in addition to the admission that each of the individual defendants had

22. Exhibit 2, p. 10.

23. Exhibit 5–5, pp. 5–6.

24. Exhibit 2, p. 15.

25. Exhibit 3, pp. 110–111.

26. Exhibit 1, pp. 115, 120, 123, 129–130; Exhibit 2, pp. 59–63; and Exhibit 3, pp. 35–38, 58–59, 112–113.

27. Exhibit 1, pp. 115–116; Exhibit 2, pp. 62–63; Exhibit 3, pp. 35–38; and Exhibit 4, p. 16.

28. *Id.*

read the Form S–18 Registration Statement and related Prospectus, each of the drafts thereof, and the previously circulated Private Placement Memorandum;[29] each of the individual defendants admitted that various, specific information contained within those documents was in fact false and misleading, and that certain historical information pertaining to the prior business activities of the individual defendants was omitted from the documents.[30] At the September meeting, the defendants' counsel informed the Commission that the funds received for subscriptions of Carriba shares were being held by the Metro National Bank of Denver, Colorado, as escrow agent, and that no closing of the issue would take place until the Commission's questions were satisfactorily answered.

On October 24, 1980, Carriba filed an amendment to its Form S–18 Registration Statement in which it applied to withdraw the S–18 and informed the Commission that it had agreed to terminate the public offering and refund all monies paid for subscriptions for shares of Carriba.

## 2. ALLEGATIONS OF THE COMMISSION

The Commission's Verified Complaint alleges that Carriba and Defendants Winograde, Pollard, Williams and Rehm violated Section 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a), Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and SEC Rule 10b–5 promulgated thereunder, 17 C.F.R. 240.10b–5, as follows in pertinent part:

**29.** Exhibit 1, pp. 115–116, 120, 123, 129–132, 135; Exhibit 2, pp. 59–63; Exhibit 3, pp. 35–38, 58–59, 71–72, 80, 112–114; and Exhibit 4, p. 16.

**30.** Exhibit 1, pp. 124, 127–132; Exhibit 2, pp. 51, 79; Exhibit 3, pp. 50, 54, 57; and Exhibit 4, p. 17.

**31.** Section 17(a)(2) and (3) of the Securities Act, 15 U.S.C. § 77q(a)(2) and (3) provides:

"It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly—

"15. As part of and in furtherance of the aforesaid conduct violative of Sections 17(a)(2) and 17(a)(3)[31] said Defendants made untrue statements of material facts, concerning, but not limited to, the following:

(a) positions held by Carriba's principals in another company which was declared bankrupt shortly before Carriba's formation;

(b) the roles which Carriba's principals planned to play in the company; and

(c) the initial capitalization of Carriba.

16. As part of and in furtherance of the aforesaid conduct violative of Sections 17(a)(2) and 17(a)(3), said Defendants omitted to state material facts necessary in order to make the statements made, in the light of circumstances in which they were made, not misleading, concerning, but not limited to, the following:

(a) The connection between Carriba and Old South Air Service, Inc. d/b/a Air Caribbean ("Air Caribbean"), which was declared bankrupt shortly before Carriba was formed;

(b) The correct legal name and date and place of bankruptcy of Air Caribbean;

(c) The involvement of Carriba's principals in past unsuccessful commuter airline ventures; and

(d) The competition faced by Carriba.

20. As part of and in furtherance of the aforesaid conduct violative of Section 17(a)(1) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b–5 thereunder,[32] said Defendants

(1) * * *, or (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser."

**32.** Section 17(a)(1) of the Securities Act, 15 U.S.C. § 77(q)(a)(1); Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b); and Rule 10b–5 promulgated thereunder, 17 C.F.R. 240.10b–5, make it unlawful for any person in connection

made untrue statements of material facts concerning, but not limited to, the following:

(a) That Williams was only an officer, director of sales, and a director of Old South Air Service, Inc. d/b/a Air Caribbean ("Air Caribbean"), when, in fact, Williams was also a founder, promoter and chief executive officer responsible for the day-to-day operations of Air Caribbean;

(b) That Pollard was only assistant secretary-treasurer and a controlling shareholder of Air Caribbean when, in fact, Pollard was also a founder, promoter and director of Air Caribbean;

(c) That Rafael Facundo, Carriba's director of operations, was self-employed from 1977–79, when, in fact, he was employed by Air Caribbean as its chief pilot and director of operations during this period;

(d) That Pollard and Winograde have been repaid their expenses in organizing Carriba when, in fact, they have not.

21. As part of and in furtherance of the aforesaid conduct violative of Section 17(a)(1) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b–5 thereunder, said Defendants omitted to state material facts necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading, concerning, but not limited to, the following:

(a) That Winograde was the West Coast representative and was held out to be vice-president of Air Caribbean;

(b) That the majority of Carriba's employees were formerly employed by Air Caribbean;

(c) That Air Caribbean was adjudicated bankrupt under the name "Old South Air Service, Inc. d/b/a Air Caribbean" in Puerto Rico in November 1979;

(d) That Rehm would not be Carriba's chief executive officer;

(e) That Pollard is involved in another business venture which decreases her available time to act on behalf of Carriba;

(f) That Michael Smith was a principal executive officer, director and founder of Air Caribbean and has been employed as a consultant by Carriba;

(g) That Williams, Pollard and Michael Smith were both affiliated with a financially unsuccessful commuter airline called Caribbean Island Airways;

(h) That Williams was involved with another financially unsuccessful commuter airline called North Air, Inc.;

(i) That in addition to the competition faced by Carriba which is disclosed in its prospectus, three other commuter airlines serve or recently have served the same route as Carriba's proposed route."

*Jurisdiction and Venue*

In the previous Order herein, dated November 19, 1980, the court denied Plaintiff Commission's Motion for a Temporary Restraining Order and Constructive Trust on the ground that no immediate and irreparable injury, loss or damages would result prior to the hearing on the motion for a Preliminary Injunction. The court also found that it has jurisdiction of the subject matter of this action, which is posited by Section 20(b) of the Securities Act, 15 U.S.C. § 77t(b), and Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d). Moreover, by previous Memorandum and Order dated November 7, 1980, the court has

with the purchase ["offer" under 17(a)] and sale of securities, by the use of the means and instrumentalities of interstate commerce and by the use of the mails, directly and indirectly:

"(a) To employ devices, schemes, and artifices to defraud;

(b) To make untrue statements of material facts and omit to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and

(c) To engage in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers...."

found that venue is proper in this jurisdiction. *Securities and Exchange Commission v. Carriba Air, Inc., et al.*, CCH [Current] Fed.Sec.L.Rep. ¶ 97,700 at 98,667 (November 7, 1980).

The Court further finds that it has personal jurisdiction over defendants Carriba, Winograde, Pollard and Williams based upon their appearance through counsel at each of the prior hearings herein, including the evidentiary hearing held January 12 through 14, 1981, and based further upon the filing of pleadings, briefs and other documents with the Court by counsel on behalf of defendants Carriba, Winograde, Pollard, and Williams, contesting Plaintiff's action. *Murphy v. Travelers Insurance Company, et al.*, 534 F.2d 1155, 1159 (5th Cir. 1976); *Union Camp Corp. v. Dyal*, 460 F.2d 678, 684 (5th Cir. 1972).

Defendant Rehm has not been served with process herein and has not appeared personally or through counsel for the purpose of contesting the Commission's action; therefore, the court finds that it does not have personal jurisdiction over him. Accordingly, this ruling does not apply to him.

### 3. CARRIBA'S PROSPECTUS

While the Commission's Verified Complaint sets forth various allegations of specific misrepresentations or specific omissions to disclose material information (some of which are admitted by the individual defendants through their oral testimony, Exhibits 1, 2, 3 and 4), the major thrust of the Commission's concerns is that the Defendants have failed to fully disclose the close connection between Carriba and Old South Air Service, Inc. d/b/a Air Caribbean ("Air Caribbean"), a now defunct commuter airline that was either founded, promoted, owned, operated, or controlled by Defendants Williams and Pollard and Mr. Smith, with the assistance of Defendants Winograde and Rehm, who were employees of Air Caribbean. Further, the Commission complains that no disclosure exists in the S–18 Registration Statement regarding the involvement of Defendants Williams and Pollard in Caribbean Island Airways, a previous commuter airline in the San Juan/Caribbean area which is also now defunct. Also, the Commission complains that Defendant Williams' involvement with a defunct commuter airline operation in Alaska, North Air, Inc., was likewise not disclosed.[33] The Commission contends that disclosure of these past unsuccessful, similar business ventures, which have been conducted in whole or in part by the individual defendants herein, is indeed "material" information necessary for a "reasonable investor" to determine whether or not such investor should invest in Carriba, a new start-up commuter airline venture.

The testimony of the individual defendants admits:

Defendant Pollard was a founder, promoter, director and secretary-treasurer of Air Carribean; Defendant Williams was a founder, promoter, director and president of Air Carribean; Defendant Winograde was an employee and stockholder in Air Caribbean; and Defendant Rehm was an employee of Air Caribbean.[34] A majority of Carriba's employees were former employees of Air Caribbean.[35] Smith, who with Defendant Williams, was responsible for many of the start-up duties related to Carriba, was a substantial stockholder, officer and director of Air Caribbean.[36] Air Caribbean was adjudicated bankrupt in Puerto Rico in November 1979 under its proper legal name, Old South Air Service, Inc. While the Prospectus and other Carriba filings with the Commission refer to a bankruptcy by "Air Caribbean," no disclosure of the proper legal name of the company, as shown on the bankruptcy docket (Exhibit 9) as Old South Air Service, Inc., is made. Air Caribbean flew similar aircraft and an identical route

---

**33.** Exhibit 1, pp. 127–132.

**34.** Exhibit 1, pp. 29–42, 35, 43–82, 127–132; Exhibit 2, pp. 66–68; Exhibit 3, pp. 14, 18; and Exhibit 4, pp. 11–15.

**35.** Exhibit 1, p. 81; Exhibit 2, p. 67.

**36.** Exhibit 1, pp. 61, 88–91; Exhibit 2, pp. 65–66, 68; Exhibit 3, pp. 48–49; and Exhibit 4, p. 10.

to that proposed to be flown by Carriba.[37] Carriba's genesis occurred within one month of the final demise of Air Caribbean through liquidation proceedings in bankruptcy.[38]

While Carriba's Prospectus and related disclosure documents filed with the Commission make isolated references to the bankruptcy of Air Caribbean, said Prospectus does not fully disclose those matters quoted hereinabove from the Complaint, respecting prior involvements with Air Caribbean. Moreover, Carriba's Prospectus does not disclose at all the involvement of Defendants Williams and Pollard in Caribbean Island Airways, nor does it disclose Williams' involvement as president and chief executive officer of North Air, Inc.

In addition to the foregoing omissions of facts from Carriba's Prospectus, the Prospectus contains certain false statements. Rafael Fecundo, Carriba's director of operations, was employed by Air Caribbean as its chief pilot and assistant director of operations for an approximate 15 month period in 1978 and 1979 (Exhibit 5–7), while Carriba's Prospectus indicates that he was "self employed" during that time period. Additionally, the Prospectus falsely states that Pollard and Winograde were repaid their original $28,000 investment in Carriba when, in fact, they have not been so repaid. Each of the individual defendants herein admit that they knew, prior to the circulation of Carriba's Prospectus, that these statements in the Registration Statement and related Prospectus were incorrect. It also conceals Williams' true role as President and chief executive officer of Air Caribbean by referring to him as "an officer and director of sales," but fails to point out that he was the principal person responsible for the operations of a failed business virtually identical to Carriba's proposed business in which the public was being asked to invest.

## 4. THE MISREPRESENTATIONS AND OMISSIONS OF FACT WERE "MATERIAL"

■ Carriba and the three individual defendants who are personally before the court contend that the Commission's allegations pertaining to misrepresentations and omissions do not involve "material" facts. Defendants rely upon the Supreme Court case of *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976). While the Supreme Court's enunciation of a standard of materiality therein provides some guidance to this court in connection with the instant matter, the Supreme Court in *TSC Industries* was called upon to determine the appropriate standard of materiality of omissions in connection with a purported violation of Section 14(a) of the Exchange Act and Rule 14a–9 promulgated thereunder, respecting the disclosure requirements necessary in proxy soliciting materials. The Supreme Court stated:

> "The general standard of materiality that we think best comports with the policies of Rule 14a–9 is as follows: An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote ... It does not require proof of a substantial likelihood that disclosure of the omitted fact would have caused the reasonable investor to change his vote ... Put another way, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." (Footnote omitted.) 426 U.S. 438, at 449, 96 S.Ct. 2126, at 2132.

In *TSC Industries*, the Supreme Court acknowledged the test of materiality under other provisions of the securities laws as set forth by the Fifth Circuit Court of Appeals in *Smallwood v. Pearl Brewing Co.*, 489 F.2d 579, 603–604 (5th Cir. 1974), stating:

> "In these cases, panels of the Second and Fifth Circuits opted for the conventional tort test of materiality—whether a reasonable man would attach importance to the fact misrepresented or omitted in de-

---

**37.** Exhibit 1, pp. 55, 153, 158.

**38.** Exhibit 1, pp. 75, 80.

termining his course of action." 426 U.S. 438, at 445, 96 S.Ct. 2126, at 2130–2131, 48 L.Ed.2d 757.

In *Securities and Exchange Commission v. IMC International, Inc.*, 384 F.Supp. 889 (N.D.Tex.) *aff'd* 505 F.2d 733 (5th Cir. 1974), the court was called upon to determine whether defendants in that action should be enjoined in a Commission injunctive proceeding due to allegedly false and misleading disclosure by the defendants in various reports required to be filed with the Commission pursuant to Sections 13(a) and 14(f) of the Exchange Act. The court held that:

> "It is clear that information concerning the background of management was required to be disclosed. It is equally clear that when a registrant includes that information in the filing, there is an obligation to set it forth accurately." 384 F.Supp. 889, at 894.

Following the rationale of the Supreme Court in *TSC Industries, supra*, and the prior precedent established by the Fifth Circuit in *Smallwood, supra*, and *IMC International, supra*, this Court concludes that the failure of the defendants to fully and completely disclose the prior involvements of the defendants in various, successive unsuccessful commuter airline ventures spanning a ten-year period of time was "material" in connection with this new issue of securities relating to the start-up of a new commuter airline venture. This Court concludes that, "a reasonable man would attach importance to the fact misrepresented or omitted in determining his course of action." *Smallwood, supra*, at 604. The public investors being called upon to invest their funds in this new venture had a right to know that one or more of the individual defendants had been associated with a succession of unsuccessful commuter airline ventures, beginning with North Air, Inc. in the very early 1970's, Caribbean Island Airways in the mid-1970's, and Old South Air Service, Inc. d/b/a Air Caribbean in the late 1970's. The untrue statements of material fact and omissions to state material facts made by Defendant Carriba and the individual defendants herein violated the anti-fraud provisions of the Securities Act and the Exchange Act.

5. CARRIBA DID OFFER AND SELL ITS COMMON STOCK

Defendants contend that no "sale" has occurred herein. There is no question, however, that an "offer" within the meaning of Section 2(3) of the Securities Act, 15 U.S.C. § 77b(3), has indeed occurred by the circulation of Carriba's Prospectus to members of the investing public. By finding that an "offer" has occurred, the Court need not determine for purposes of Section 17(a) of the Securities Act whether a "sale" has occurred. However, the testimony adduced at the evidentiary hearing herein, through witnesses who testified on behalf of defendants (including Defendant Winograde), clearly indicates that Carriba's common stock was not only offered to the public but sold. Witnesses Chotin and Hartstein, who were called by the defendants, testified that they knew that the proposed Carriba 12,000,000 share new issue was fully subscribed by public investors during the month of September 1980. Each of these defendants indicated that they executed subscription agreements and *tendered funds* to SCCI for the purchase of Carriba common stock. The funds were in fact transmitted to the underwriter. The definitions of "purchase" and "sale" in the Exchange Act [Sections 3(a)(13) and (14) of the Exchange Act, 15 U.S.C. § 78c(a)(13) and (14)] provide:

> "(13) The terms 'buy' and 'purchase' each include any contract to buy, purchase or otherwise acquire.
>
> (14) The terms 'sale' and 'sell' each include any contract to sell or otherwise dispose of."

The Court concluded that the subscription agreements entered into by public investors for the purchase of 12,000,000 shares of Carriba common stock involved both the "purchase" and "sale" of said securities. *Rubin v. United States*, —— U.S. ——, 101 S.Ct. 698, 66 L.Ed.2d 633 (January 21, 1981).

## 6. THE DEFENDANTS ACTED WITH "SCIENTER"

In order to prove a violation of Section 17(a)(2) and (3) of the Securities Act, the Commission need not prove scienter.[39] *Aaron v. Securities and Exchange Commission*, 446 U.S. 680, 697, 100 S.Ct. 1945, 1956, 64 L.Ed.2d 611 (1980). Since scienter is not an element of proof of violation of these provisions of the Securities Act, this Court finds that the defendants have violated Sections 17(a)(2) and (3) of the Securities Act due to the material misrepresentations and omissions which have been made in connection with the offer and sale of the common stock of Carriba.[40]

Defendants contend that the Commission has failed to prove that the defendants acted with "scienter". The recent opinion of the Supreme Court in *Aaron, supra*, requires a showing of "scienter" for violations of Section 17(a)(1) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b–5 promulgated thereunder. *Aaron, supra*, relies in large part upon the Supreme Court's decision in *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), which is based upon a finding that the plain meaning of the language of Section 10(b) of the Exchange Act evidences a Congressional intent to proscribe "knowing or intentional misconduct."

Following the Supreme Court's enunciation in *Hochfelder, supra*, the Fifth Circuit Court of Appeals in *Securities and Exchange Commission v. Blatt*, 583 F.2d 1325, 1333–1334 (5th Cir. 1978), determined that "scienter" was a necessary element of a Commission injunctive action alleging violations of Section 10(b) of the Exchange Act (some two years before the Supreme Court articulated this rationale in *Aaron, supra*). In determining whether the Commission had met this required "scienter" element, the Fifth Circuit in *Blatt, supra*, 583 F.2d, at 1334, stated:

> "Their conduct, in our judgment, encompassed just the type of 'knowing or intentional misconduct' that § 10b was intended to prescribe.
>
> .  .  .  .  .
>
> We are confident that 'knowing' conduct satisfies the scienter requirement."

Based upon the testimony of the individual defendants herein, acting in their capacities as founders, promoters, directors and/or officers of Carriba, the individual defendants supplied much of the information necessary for the drafting of the Prospectus.[41] Additionally, each of the defendants reviewed the Prospectus-Registration Statement and amendments thereto prior to the filing of said documents with the Commission and circulation of the Prospectus to the investing public.[42] Each of the defendants knew that the Prospectus contained misleading statements of fact and omitted to state material facts about the individual defendants' own involvement in prior, similar airline operations.[43] In spite of this personal review and personal knowledge, the defendants authorized the circulation of the misleading Prospectus, and took no steps to correct it.

---

**39.** Defendants Carriba and Winograde, in their Trial Brief herein dated January 12, 1981 admit, at page 5, that "scienter is not an element which needs to be established to demonstrate a violation of Section 17a(2) and (3) of the Securities Act."

**40.** *See, Securities and Exchange Commission v. Carriba, Inc., et al.*, CCH [Current] Fed.Sec.L. Rep. ¶ 97,700, at 98,668, wherein this Court, in ruling upon the motion of Defendants Carriba and Winograde to dismiss this action, alleging improper venue, found that venue was proper, in part, based upon the fact that the defendants used the U.S. mails to file the S–18 Registration Statement and related Prospectus with the Commission's Atlanta Regional Office. Thus, the use of the mails as an integral part of the defendants' alleged improper conduct has been previously found to exist by this Court.

**41.** *See, e. g.*, Exhibit 1, at p. 115; Exhibit 2, at p. 62 and Exhibit 3, at pp. 35–38.

**42.** *See, e. g.*, Exhibit 1, at pp. 116, 120; Exhibit 2, at p. 63; Exhibit 3, pp. 58–59, 112–113; and Exhibit 4, at p. 16.

**43.** *See, e. g.*, exhibit 1, at pp. 124, 126–128, 131; Exhibit 2, pp. 51, 79; Exhibit 3, at pp. 50, 54, 57; and Exhibit 4, at p. 17.

Following the rationale of *Aaron, supra, Hochfelder, supra,* and *Blatt, supra,* the knowing conduct of the defendants, coupled with the numerous material misrepresentations and omission contained in the Prospectus-Registration Statement demonstrates that the defendants herein acted with the degree of scienter necessary to violate Section 17(a)(1) of the Securities Act, Section 10(b) of the Exchange Act and Rule 10b–5 promulgated thereunder.

*Need for Injunctive Relief*

The defendants contend that, notwithstanding proof that violations have occurred, this Court should not issue a preliminary injunction against the defendants. They also point out that the funds of the public investors were deposited in the Metro National Bank in Denver, Colorado, pursuant to a written escrow agreement which provided that the monies collected in the public offering were not to become the property of Carriba or subject to its control until the escrow period terminated at the closing of the offering. Also, that the monies were refunded to the investors.

Section 21(d) of the Exchange Act provides, in pertinent part:

"Wherever it shall appear to the Commission that *any person is engaged* or is about to engage in acts or practices constituting a violation of any provision of this title . . . it may in its discretion bring an action in the proper District Court of the United States . . . to enjoin such acts or practices, and *upon a proper showing a permanent or temporary injunction or restraining order shall be granted without bond.*" (Emphasis supplied.)

Section 20(b) of the Securities Act is similarly worded.

In *Securities and Exchange Commission v. Mize,* 615 F.2d 1046, 1051 (5th Cir. 1980), the Fifth Circuit most recently stated:

". . . To satisfy the 'proper showing' requirement in a case *where current violations are not alleged,* the SEC must establish that there is a reasonable likelihood that the defendant, if not enjoined, will engage in future violations of the securities laws." (Emphasis supplied.) *Id.*

The Commission has demonstrated current violations and a pattern of past, present and continuing violations. This action was instituted during the initial public offering of Carriba common stock during which the violations of the anti-fraud provisions were present and continuing in nature. The violations were being repeated during the entire offering period, and each and every time a sale was made. The Commission has demonstrated that the original S–18 Registration Statement filed with the Commission on or about May 30, 1980, contained untrue statements and omissions of material facts quite similar to (if not identical to) those found to have occurred in the circulation of Carriba's Prospectus. Notwithstanding that this false filing was months before the commencement of the offer and sale of the securities, no action was taken to correct the obviously misleading registration documents. Moreover, Carriba made a private placement of securities to a limited number of individual investors in reliance upon the private placement exemption of the securities laws and the Private Placement Memorandum (Exhibit 5–8) contained similar (if not identical) untrue statements and omissions of material facts. Thus, Plaintiff Commission has demonstrated a continuing pattern of anti-fraud violations by the Defendants herein in the private placement and public offering of Carriba common stock over a period of approximately nine months.

The Commission has proved current violations; and, in addition, the standards articulated in *Blatt, supra,* and *Aaron, supra,* have also been met. The Commission has demonstrated *past, present and continuing* violations of the anti-fraud provisions. The evidence shows that the Defendants' violations were knowing and deliberate. A reasonable likelihood that the improper conduct will continue, unless enjoined, has been shown.

This Court hereby issues the requested Preliminary Injunction against Defendants Carriba, Winograde, Pollard and Williams by the attached Order filed contemporaneously herein.

## ORDER IMPOSING PRELIMINARY INJUNCTION

Based upon the Memorandum Opinion filed contemporaneously herewith, respecting the motion of Plaintiff, Securities and Exchange Commission, seeking a Preliminary Injunction against Defendants Carriba Air, Inc., Marvin Winograde, Gertrude Pollard and Richard Williams respecting violations of Section 17(a) of the Securities Act of 1933, as amended [15 U.S.C. § 17q(a)] and Section 10(b) of the Securities and Exchange Act of 1934 [15 U.S.C. § 78j(b)] and Rule 10b–5 thereunder [17 C.F.R. 240.10b–5], and upon the further finding that its action taken this day, as embodied herein, is in the public interest; accordingly, the Court being fully advised in the premises,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

I. That Defendants Carriba Air, Inc., Marvin Winograde, Gertrude Pollard, and Richard Williams, their agents, servants, employees, successors, assigns, attorneys and all persons in active concert or participation with them who receive actual notice of this preliminary injunction, and each of them, whether as principals or as aiders and abettors, be and hereby are restrained and enjoined until further order of this Court from, directly or indirectly:

A. In the offer or sale of common stock of Carriba Air, Inc., or any other security, by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails:

(1) Employing any device, scheme, or artifice to defraud;

(2) Obtaining money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

(3) Engaging in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon any purchaser of such securities.

B. In connection with the purchase or sale of common stock of Carriba Air, Inc., or any other security, by the use of any means or instrumentalities of interstate commerce or of the mails:

(1) Employing any device, scheme, or artifice to defraud;

(2) Making any untrue statement of a material fact or omitting to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

(3) Engaging in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

II. IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that this Court retains jurisdiction of this matter for all purposes.